SPROUSE, Circuit Judge:
The Internal Revenue Service appeals from a judgment of the district court, 38 B.R. 725, affirming the bankruptcy court’s ruling that the IRS had violated the automatic stay[1] imposed in the Chapter 13[2] bankruptcy proceeding of George E. and Sue S. Reynolds by “freezing” or retaining an income tax refund owed to the Reyn-oldses. The Reynoldses owed taxes for a previous year, and the IRS had retained part of the refund for a contemplated set-off. The IRS also appeals the district court’s order requiring it to turn over the retained funds to the Reynoldses. The trustee in bankruptcy cross appeals from that part of the district court judgment holding that the IRS possessed a security interest in the retained funds. We affirm.
The material facts are not in dispute. On August 16, 1980, the Reynoldses filed a delinquent federal joint income tax return for the taxable year 1979. The return showed tax due of $1,343.80, which was not paid. On October 30, 1980, they filed a joint petition under Chapter 13 of the Bankruptcy Code, with a proposed plan attached. The plan required the Reynoldses to pay $225 monthly for thirty-six months to the bankruptcy trustee, who would “make disbursements as follows”:
(a) The claims entitled to priority under section 507 of the Bankruptcy Code.
(b) Dividends to secured creditors whose claims are duly filed and allowed as follows: See Attachment.
(c) Dividends to unsecured creditors whose claims are duly filed and allowed as follows: See Attachment.
(d) The post-petition claims incurred by debtor as follows: All.
A schedule attached to the plan indicated that of the $225 per month, $200 would be applied to retiring a security interest in the Reynoldses’ auto, held by First Seneca Bank & Trust Company, to a total of $5,950. Further, the schedule provided that unsecured creditors would share pro rata in the remainder of the money paid in. Despite the reference in the plan to section 507 claims, the schedule makes no express provision for disbursements on such claims. On November 14, 1980, the bankruptcy court issued notice, received by the IRS on November 20, 1980, scheduling a meeting of creditors for November 25, 1980, to be followed by a hearing on confirmation of the plan on December 2, 1980. The meeting and hearing were held as scheduled, and the plan was confirmed on December 2, 1980, without objection from the IRS. Counsel for the Reynoldses and the Chapter 13 trustee represented to the district court, and asserts in his brief, that the Reynoldses have made all payments required under the plan. Counsel further asserts that the trustee holds a fund sufficient to pay all IRS tax claims but has refrained from doing so pending the resolution of this litigation.
On July 7, 1981, the IRS filed proof of claim for the Reynoldses’ unpaid 1979 tax liability. The deficiency plus interest to the date of the bankruptcy petition were listed as an unsecured priority claim under section 507(a)(6) of the Bankruptcy Code. 11 U.S.C. § 507(a)(6) (1982). A penalty was filed as a general unsecured claim.[3]
On August 6, 1981, the Reynoldses filed a delinquent joint income tax return for the taxable year 1980. The return claimed a refund due of $2,024.99. To date the IRS has remitted to the Reynoldses only $348.35, retaining $1,681.96[4] in a “suspense account.”[5]
*1006 The instant litigation began on January-11, 1982, when the IRS filed a complaint in the bankruptcy court seeking relief from the section 362 automatic stay to permit the IRS to set off the retained portion of the 1980 refund against the unpaid 1979 deficiency, interest, and penalty. The Reynoldses filed a counterclaim seeking an order compelling the IRS to pay the retained funds to them. The bankruptcy court subsequently entered an order dismissing the IRS’s complaint and ordering it to turn over the funds to the Reynoldses. The court concluded that retention of the funds by the IRS violated the automatic stay and that the Reynoldses’ plan provided for payment of the 1979 tax liability as a priority claim, binding the IRS to accept it. On appeal, the district court, after granting the motion of the Chapter 13 trustee to intervene, affirmed on the same grounds. The court added that although the IRS was a secured creditor, by virtue of its right of setoff under 11 U.S.C. § 553(a) (1982), the Reynoldses could recover the portion of the refund retained by the IRS because the confirmed bankruptcy plan provided “adequate protection” of the IRS’s security interest. 11 U.S.C. §§ 361, 362(d)(1) (1982). The IRS appealed, contending that retention of the funds did not violate the automatic stay and that the Reynoldses had not provided adequate protection. The trustee cross appealed, contesting the district court’s conclusion that the IRS was a secured creditor.
The IRS’s first contention involves two sections of the Bankruptcy Code — 11 U.S.C. § 553(a) (1982) and 11 U.S.C. § 362(a) (1982). Section 553 preserves the right of a creditor to set off debts owed by it to the debtor against debts owed by the debtor to the creditor.
this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case____
Section 362 is the automatic stay provision. Among other things, section 362(a) stays:
(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor____
11 U.S.C. § 362(a)(7) (1982). As the Court of Appeals for the Third Circuit said in United States v. Norton:
The scope of the automatic stay is broad. It prohibits, among other things, any act to obtain possession of property belonging to the debtor’s estate, any act to collect on a claim against the debtor that arose before the filing in bankruptcy, and any act to set off a debt owing to the debtor that arose before the filing.
717 F.2d 767, 771 (3d Cir.1983).
The parties concede that together these sections preserve a creditor’s right to any setoff he possesses but automatically stay the exercise of that right unless the creditor obtains from the bankruptcy court relief from the automatic stay. The IRS contends, however, that in retaining a portion of the refund it was not exercising the setoff but was merely “freezing” the funds to preserve the status quo until the automatic stay expired by conclusion of the bankruptcy proceedings or otherwise. The district court disagreed, as does this court.
Like the district court, we find persuasive the reasoning of the Third Circuit in Norton, a case closely analogous to this one. The court in Norton held that the determination of whether given circum *1007 stances amount to a setoff in a bankruptcy proceeding depends on state law. It reasoned that under Pennsylvania law retention of a refund by the IRS under similar circumstances as exist here amounts to a setoff. The Reynoldses are residents of Virginia, and we have not been provided with nor do we find Virginia precedent on this issue. We are impressed, however, with language in Norton expounding a broader rationale which we find appropriate to apply in the absence of either Federal or state law controlling this discrete issue of whether such retention is a setoff.
The IRS maintains that, in withholding a portion of the Nortons’ overpaid taxes, it has not violated the automatic stay. Rather it has simply “frozen” the debtors’ account so as to preserve its setoff rights against the Nortons. The automatic stay does not extinguish setoff rights, according to the Government; it simply postpones their enforcement.
This Court has already prohibited banks from setting off debts against a corporate account during the pendency of a reorganization proceeding, unless those banks first request and receive relief from the automatic stay in a bankruptcy court____ If a bank could freeze the debtor’s accounts upon the filing of a petition in bankruptcy, the debtor’s chances for successful rehabilitation would be substantially diminished.
The same reasoning applies [in Chapter 13 cases]____ If a creditor could circumvent the automatic stay simply by delaying the entry of a setoff or credit in its books, it could hold the funds until the case was closed and then deposit them into its own bank account. By the unilateral action of one creditor, these funds would become unavailable for distribution to other creditors or for use by the debtor in a Chapter 13 plan, thus making it that much less likely that the debtor could be rehabilitated.
717 F.2d at 771, 773 (citation omitted).
We conclude that under the circumstances of this case the action of the IRS in retaining the Reynoldses’ refund was a set-off subject to the automatic stay and that the IRS violated the stay in retaining the funds.
The IRS next argues that the bankruptcy court should have granted its motion for relief from the automatic stay and permitted it to keep the funds rather than ordering turnover to the Reynoldses. The district court found that there was provision in the confirmed Chapter 13 plan for payment of the tax claims and that the interest of the IRS as a secured creditor enjoyed the “adequate protection” required by 11 U.S.C. §§ 361, 362(d)(1) (1982). According to the court, adequate protection was provided by the plan’s requirement of periodic payments by the Reynoldses and their conscientious performance of that duty. The IRS disagrees with that factual conclusion, arguing that there is no provision in the plan assuring that the 1979 tax liability will be paid.
We find it unnecessary to resolve the question of whether the IRS is a secured creditor on the rationale of Segal v. Rochelle, 382 U.S. 375, 376, 86 S.Ct. 511, 513, 15 L.Ed.2d 428 (1966), as contended by the IRS, or an unsecured creditor, as contended by the trustee. In either category, it is assured of payment. The Reynoldses’ plan provides, as quoted above, that the fund created from the periodic payments be distributed to, inter alia, section 507 priority claims, secured claims, and unsecured claims. We agree with the IRS that the plan as supplemented by the accompanying schedule is not a model of clarity. The schedule details payments to the secured creditor First Seneca Bank but leaves the IRS to rely only upon recovery from the fund for unsecured creditors, in which it has a statutory priority by virtue of 11 U.S.C. § 507(a)(6) (1982). Counsel for the Reynoldses and the trustee, however, represented to the district court and represent to us both in briefs and argument that there are sufficient funds now held by the trustee in the estate to pay the IRS claim. He asserts that the only reason the IRS claim has not been paid to date is the delay *1008 caused by this litigation. Regardless, then, whether the IRS is a secured creditor entitled to adequate protection under section 362 or an unsecured creditor with a section 507(a)(6) priority, it is assured of payment in full. The trustee, by virtue of the terms of the plan and the representations made to us and the district court, is obligated to satisfy the IRS tax claim before meeting debts of general unsecured creditors and now has sufficient funds to pay that claim in full.
AFFIRMED.

. 11 U.S.C. § 362(a) (1982).

. 11 U.S.C. §§ 1301-30 (1982).

. The claim was filed out of time, but because no objection was raised the court allowed it.

. The IRS asserts that this amount represents the portion of the refund allocable to the period prior to the filing of the bankruptcy petition. It computes the amount as follows: The petition was filed on October 30, which was the 304th
*1006 (a) Except as otherwise provided in this section and in sections 362 and 363 of day of 1980. Thus 304/366 of the total refund of $2,024.99, or $1,681.96, purportedly is attributable to the prepetition period. This method of computation has been approved in several cases, In re Rash, 22 B.R. 323 (Bankr.D.Kan. 1982) (citing cases), and we have no reason to reject it here.

. See note 5 on page 1006.
*1006 5. The failure of the figures to balance correctly is not explained in the record.