**In re Theodore R. PRICE and Ollie P. Price, Debtors.**

**Bankruptcy No. 89 B 00796.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Aug. 23, 1989.

Kathleen A. McMahon, Robert McKenzie, McKenzie & McKenzie, Chicago, Ill., for debtors Theodore R. Price and Ollie P. Price.

Mayer Silber, Sp. Asst. U.S. Atty., Chicago, Ill., for I.R.S.

Benjamin R. Norris, Tax Div., U.S. Dept. of Justice, Washington, D.C., representative of the Dept. of Justice Tax Div.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes to be heard on a petition for rule to show cause filed by Theodore R. Price and Ollie P. Price (the "Debtors") against the United States of America through its Internal Revenue Service (the "IRS"). For the reasons set forth herein, the Court, having considered all the pleadings hereby finds that the Debtors shall be awarded their costs and reasonable attorney's fees incurred as actual damages resulting from the willful violation of the automatic stay by the IRS.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction pursuant to 28 U.S.C. § 1334 and General Orders of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), and (O).

## II. FACTS AND BACKGROUND

On January 17, 1989, the Debtors filed a voluntary petition seeking relief under Chapter 13 of the Bankruptcy Code. The United States of America was listed as a creditor on Schedule A–1 and was properly notified of the fact the case had been filed. On January 24, 1989, a notice and order for a meeting of creditors under 11 U.S.C. § 341(a) was served by mail, scheduling a meeting of creditors for February 14, 1989. The IRS was listed on the certificate of service. The section 341(a) notice was mailed to the Special Procedures division of the IRS in Chicago, Illinois.

The Debtors' plan proposed to pay to the Chapter 13 trustee the sum of $430.24 a month for thirty-six (36) months, paying 100 percent to all creditors. No objections were filed to confirmation. Subsequently, on February 28, 1989, an order of confirmation was entered. On May 9, 1989, the IRS timely filed its proof of claim in the amount of $12,732.57. The claim consisted of several components of unpaid income tax for the years 1986, 1987, and 1988. The claim was duly executed on behalf of the IRS and is the single largest claim filed in the case.

On April 25, 1989, the Debtors served the IRS with the petition for a rule to show cause. The Debtors allege that on April 17, 1989, they received from the IRS a Notice of Intention to Levy (the "IRS Notice"). The IRS Notice was for the tax year ending December 31, 1988, and claimed a total amount due of $3,188.65. It provides in relevant part:

> This is your final notice. Your full payment of the federal tax shown below has still not been received. If full payment is not received within ten days from the date of this notice, we will begin enforcement proceedings.

A notice of federal tax lien may be filed, which is a public notice that there is a tax lien against your property. As provided by section 6331 of the Internal Revenue Code, your property or rights to property may be seized. This includes salary or wages, bank accounts, commissions, or other income. Real estate and personal property such as automobiles, may also be seized and sold to pay your tax.

Further, the Debtors assert that their counsel called the IRS on April 18, 1989, and that the employee who answered the telephone refused to discuss the matter. Additionally, they allege that counsel called the Special Procedures staff three times that day and was advised that she had to speak to a named individual who was not available. No telephone calls were returned. The Debtors claim that they incurred legal fees in attempting to forestall the threatened levy. They seek a finding of civil contempt pursuant to Federal Rule of Bankruptcy Procedure 9020 and 11 U.S.C. § 362.

At the time the petition for a rule to show cause was presented to the Court on May 3, 1989, it was supported by an affidavit from the Debtors' counsel. The affidavit recites that counsel had a telephone call with a staff attorney of the district counsel for the IRS on April 28, 1989, who advised that he could not guarantee that the IRS would not levy prior to May 9, 1989. The affidavit further states that if the IRS levied, the Debtors would be unable to make their plan payments and suffer irreparable harm. On May 3, 1989, the Court advised the Debtors and the IRS that it would treat the matter under section 362(h) rather than as a motion for contempt under Bankruptcy Rule 9020.

With leave of Court, the IRS filed a response on May 23, 1989. Although unsupported by any affidavit, the response by way of a footnote asserts that the IRS Notice was mistakenly generated and automatically sent to the Debtors. Apparently, upon receipt of notice of the section 341 meeting, the IRS entered a "freeze code" into its computer system, restricting all existing accounts of the Debtors. However, due to the fact that the Debtors had filed their 1988 income tax return just prior to filing the instant case, said return had not been processed and no assessment was made when the freeze code was input. Therefore, when that return was processed, a new account was generated which appeared on the computer system unaffected by the freeze code. The principal defense of the IRS is that the doctrine of sovereign immunity bars the award of any sanctions against the United States. The Debtors' reply, filed on June 6, 1989, states that the IRS can be held in civil contempt and that the IRS has waived its sovereign immunity.

The Court set the matter for evidentiary hearing on July 25, 1989, to afford both parties the opportunity to present evidence. Prior thereto on July 12, 1989, the IRS filed a supplemental response based upon the recent United States Supreme Court decision in *Hoffman v. Connecticut Department of Income Maintenance,* ___ U.S. ___, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). The IRS claims that *Hoffman* supports the conclusion that it has not waived its claim of sovereign immunity under Section 106 of the Bankruptcy Code (the "Code"). At the scheduled evidentiary hearing on July 25, 1989, the IRS presented a motion to postpone the hearing which was agreed to by the Debtors. Nevertheless, the Court did not agree to a continued date. The Court denied the motion to postpone the hearing and took the matter under advisement, as no other evidence was offered.

The Debtors filed a supplemental reply on August 21, 1989. Thereafter, on August 22, 1989, the Debtors filed a request for admission of fact which was served on the IRS, requesting a response thereto within thirty (30) days. The Court will not consider the August 22, 1989, filing made after the matter was taken under advisement on July 25, 1989.

## III. DISCUSSION

### A. PROCEDURAL REMEDY FOR THE DEBTORS

█ The pleadings make reference to "sanctions" and "contempt." Notwith-

standing, the Court advised both parties that this matter was being adjudicated solely under the provisions of section 362. The damage remedy afforded by section 362(h) is neither a sanction nor based on contempt of court. Rather, it is a specific form of relief for willful violation of the congressionally mandated automatic stay imposed by section 362(a). The rationale behind the Court's decision to proceed pursuant to section 362 as opposed to Bankruptcy Rule 9020 was due to the fact that no court order had been allegedly violated by the IRS. Accordingly, treatment of the petition for a rule to show cause under Bankruptcy Rule 9020 would be unnecessary as the Debtors invoked section 362. Moreover, the alleged violation of the automatic stay is the central focus of the petition for a rule to show cause.

The Debtors cite numerous authorities for the proposition that the IRS can be held in civil contempt for violations of the discharge injunction provided for under 11 U.S.C. § 524. As the Chapter 13 plan has not been consummated, the Debtors are not entitled to a discharge under section 1328 at this time. Thus, the cited cases decided under section 524 are inapposite for purposes of section 362.

### B. *11 U.S.C. § 362*

■ Under section 362(a)(1), the filing of a petition in bankruptcy operates as a stay of—

> the commencement or continuation, including the issuance or employment of process, or a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). Section 362(a)(6) prevents a creditor from taking "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;" 11 U.S.C. § 362(a)(6). Prohibited conduct includes a telephone call to collect a pre-petition debt.

*In re Hellums*, 772 F.2d 379, 381 (7th Cir. 1985).

■ In enacting section 362, Congress sought to prevent creditors from attempting to collect a pre-petition debt in any way. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 342 (1977), U.S.Code Cong. & Admin. News 1978, p. 5963. Congress expressed special concern for the inexperienced and frightened debtor who may give in to demands to pay a pre-petition debt even though he is in bankruptcy. S.Rep. No. 95–989, 95th Cong., 2nd Sess. 50–51 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The intent behind section 362 is to protect the debtor, giving him relief from creditors. Consequently, the debtor is given a "more effective fresh start." *In re Smurzynski*, 72 B.R. 368, 371 (Bankr.N.D. Ill.1987). The automatic stay applies to all "entities" which by definition includes governmental units. 11 U.S.C. § 101(14). Where Congress intended governmental units to receive special treatment, it provided specific exceptions. *See e.g.*, 11 U.S.C. § 362(b)(4), (b)(5), (b)(8), (b)(9), (b)(12) and (b)(13). None of those exceptions apply to the instant matter.

■ The IRS has admitted that the issuance of the IRS Notice was a technical violation of automatic stay. However, the IRS contends that issuance of same was the result of a computer error. The IRS explains that it processes over 100 million returns a year and must necessarily utilize computers with complex programming, which inevitably results in faults in the system. The IRS concludes that if its collection system had to be shut down as to all taxpayers every time a problem developed, very little revenue would be collected. This defense is disingenuous and without merit. The IRS clearly knew upon receipt of the section 341(a) notice that the Debtors had filed a bankruptcy case and a plan to pay 100 percent of all claims. After confirmation of the plan but before filing its proof of claim, the IRS generated and sent the IRS Notice. In effect, the IRS stated that if the 1988 income taxes were not paid within ten (10) days, it would levy on all their available assets. The fact that

the IRS Notice was created by computer and issued by another department within the IRS, then unaware of the pendency of the case, is wholly irrelevant. Although all employees in a large agency such as the IRS may not be aware of an existing case, this lack of cognizance is no excuse for disregarding the Bankruptcy Code. The IRS' duty to collect revenue under the Internal Revenue Code does not excuse its violation of the automatic stay. Hence, the IRS should have taken the steps necessary to ensure that the IRS Notice did not issue. They should have timely responded to the telephone calls so as to obviate the need for the Debtors to seek additional relief before the Court. The issuance of the IRS Notice constitutes a violation of section 362(a)(1) and (a)(6).

## C. WILLFUL VIOLATION OF THE AUTOMATIC STAY

Section 362(h) provides that actual damages, including costs and attorney's fees, may be recovered by an individual for a willful violation of the automatic stay. 11 U.S.C. § 362(h). Willful is defined as a deliberate act done with the knowledge that the act is in violation of the automatic stay. *In re Forty–Eight Insulations, Inc.,* 54 B.R. 905, 909 (Bankr.N.D.Ill.1985); *In re Allen,* 83 B.R. 678, 681 (Bankr.E.D.Mo. 1988); *In re Wagner,* 74 B.R. 898, 903 (Bankr.E.D.Pa.1987). Courts have held that a creditor's knowledge of a bankruptcy filing is knowledge of the stay. *Wagner,* 74 B.R. at 904; *Allen,* 83 B.R. at 681. The *Wagner* court held that where there was evidence that the debtor's attorney had informed the creditor of the bankruptcy and instructed him to make no further collection attempts, there was a sufficient basis for concluding that the creditor acted willfully in his forthcoming threats to repossess property of the debtor so as to be held liable for actual damages.

Subsequent to the adoption of section 362(h), several courts have applied same against the IRS. *In re Carlsen,* 63 B.R. 706 (Bankr.C.D.Cal.1986) held that the IRS would be required to turnover levied funds received post-petition together with interest from the date of receipt and pay debtor's attorney the actual amount of fees incurred upon finding that the IRS had violated the automatic stay and turnover requirements. Judge Mund denied punitive damages on the facts of *Carlsen* and noted that the debtor could be made whole by return of the levied funds and award of actually incurred attorney's fees.

*In re Stucka,* 77 B.R. 777 (Bankr.C.D. Cal.1987) held the IRS liable for a willful violation of section 362 and awarded debtor's attorney's fees and costs under section 362(h). Judge Bufford noted that the IRS was bound by the provisions of the debtor's confirmed plan pursuant to section 1327(a) and that the IRS' intercepts of the debtor's tax overpayments violated the automatic stay under the facts of that case. *Stucka* at 782. The IRS' interception of tax overpayment occurred eight months after it received actual notice of the pending bankruptcy proceeding. Hence, the court in *Stucka* concluded that the intercepts conducted by the IRS were carried out with knowledge that such actions were in violation of the automatic stay and thus willful. Here, as in the *Stucka* case, the IRS is bound by section 1327(a) to the terms of repayment for its tax claims.

■ The IRS must be charged with the knowledge of its agents. The size and complexity of the IRS does not excuse its disregard for the automatic stay. *In re Shafer,* 63 B.R. 194, 198 (Bankr.D.Kan. 1986); *see also In re Santa Rosa Truck Stop, Inc.,* 74 B.R. 641, 643 (Bankr.N.D. Fla.1987). The automatic stay must be enforced against the IRS just as it is against other individual and corporate creditors who may persist in collection efforts after a petition for relief has been filed. The issuance of the IRS Notice was an affirmative act. Therefore, the Court finds that the act of sending same was a willful violation of the automatic stay.

## D. WAIVER OF SOVEREIGN IMMUNITY

■ The principal defense of the IRS is that it is protected by virtue of the sovereign immunity of the United States which it

asserts has not been waived. It further contends that none of the provisions of Section 106 of the Code apply.

Section 106 provides:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. § 106.

The IRS concludes that section 106(a) does not apply for it exists solely under the limited purpose of "prohibiting a governmental unit from receiving distribution from the estate without subjecting itself to any liability it has to the estate within the confines of a compulsory counterclaim rule." *In re Madison County Economic Opportunity Commission*, 53 B.R. 541, 542–43 (Bankr.S.D.Ill.1985). Moreover, the IRS contends that section 106(b) only allows the estate to offset any claim it may have against a governmental unit against the claim made by that unit in the bankruptcy and does not allow any affirmative recovery against the governmental unit. *In re Braniff Airways, Inc.*, 42 B.R. 443, 450 (Bankr.N.D.Tex.1984). The IRS concedes that section 106(a) and (b) operate to waive the government's right to sovereign immunity only when the government has filed a proof of claim. In spite of this, the IRS contends the waiver is limited in extent to resolving the government's claims and rights in the estate. Accordingly, as a result of the IRS filing a timely proof of claim against the Debtors' estate, even under its interpretation of section 106(a), the Court concludes that the IRS has effectively waived its sovereign immunity.

The IRS next contends that the waiver of sovereign immunity under section 106(c) is for the sole purpose of allowing the determination of the interest of the governmental unit in the estate but that nothing in that section suggests that the waiver thereby created exists beyond that necessary to determine the rights of the United States in the Debtors' estate. Furthermore, the IRS contends that the recent United States Supreme Court opinion in *Hoffman* made it clear that the United States is not subject to awards of damages under section 106(c).

The IRS' reliance on *Hoffman* is inapposite. The holding in *Hoffman* does not apply to the federal government. Rather, *Hoffman* holds that a state is immune from damage claims under the 11th Amendment to the United States Constitution. The Supreme Court, interpreting the section 106 waiver of sovereign immunity narrowly, held that section 106(c) should not be read to abrogate the 11th Amendment immunity of the state where the state has not voluntarily consented to a waiver. Important dicta is contained in a statement of the plurality which notes that "the language in § 106(c) waives the sovereign immunity of the Federal Government so that the Federal Government is bound by determinations of issues by the bankruptcy courts even when it did not appear and subject itself to the jurisdiction of the court." (citation omitted). *Hoffman*, 109 S.Ct. at 2823.

Similarly, the IRS' reliance on the dissenting opinion in *Hoffman* and the reference therein to section 362(h) is misplaced. The only reference thereto was contained in footnote four stating that "[b]ecause section 362(h) contains no trigger words, it does not apply to States." *Id.* at 2826. A point of law merely assumed in an opinion, not discussed, is not authoritative. *See e.g., Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 119 and n. 29, 104 S.Ct. 900, 918 and n. 29, 79 L.Ed.2d 67

(1984); *In re Stegall,* 865 F.2d 140, 142 (7th Cir.1989).

The plurality opinion in *Hoffman* clearly notes that section 106(c) waives the sovereign immunity of the federal government which includes the IRS. That result is clearly applicable in this case when an even stronger argument for waiver of sovereign immunity can be made under section 106(a). The IRS filed its proof of claim which covers in part the 1988 income tax year. Under the Debtors' confirmed plan, the IRS is bound to receive payment of its claim for the 1988 income taxes as well as the two years prior thereto. Thus, it would appear that the plurality view of a waiver under section 106(a) in *Hoffman* would apply. The Debtors' claim under section 362 against the IRS arose out of the IRS' willful actions to collect its claim for 1988 income taxes. Thus, the IRS' claim for unpaid 1988 income taxes and the Debtors' claim against the IRS for a violation of section 362 arose out of the same transaction or occurrence, namely the Debtors' failure to timely pay the taxes. *In re Datair Systems Corp.,* 37 B.R. 690, 695 (Bankr.N.D.Ill.1983).

Contrary to the IRS' view of Justice Marshall's dissent in *Hoffman,* the Court finds more persuasive dicta contained in Justice Steven's dissent which notes "[i]t is well settled that when the Federal Government waives its sovereign immunity, the scope of that waiver is construed liberally to effect its remedial purposes." (citations omitted). *Hoffman,* 109 S.Ct. at 2829.

The IRS also defends under the holding of *In re Academy Answering Service, Inc.,* 100 B.R. 327 (N.D.Ohio 1989). In *Academy Answering Service* the district court reversed the bankruptcy court which awarded the debtor's attorney's fees for a willful violation of the automatic stay. The court held that the doctrine of sovereign immunity precluded the award of attorney's fees under section 362(h). The district court found that the IRS was inadvertent in failing to timely modify computer software to accommodate changes in law and that same did not constitute a willful violation of the automatic stay. The court

concluded that the Chapter 11 debtor was not injured by the levy on its bank account. The IRS rectified the situation before the debtor moved for turnover and sought attorney's fees. The court concluded that the inadvertence involved did not rise to the level of willfulness. Judge Aldridge noted in *Academy Answering Service* that section 106 provides exposure only where a claim against the government relates to "property of the estate" and arises "out of the same transaction or occurrence out of which [the government's claim] arose." *Id.* at 330.

*Academy Answering Service* is distinguished from the facts of this case in that it involved a Chapter 11 proceeding which included as property of the estate that defined in Section 541 of the Code. However, there is additional property of the estate in the case at bar. Section 1306 defines property of the estate to include, in addition to that defined in section 541, "earnings from services performed by the debtor after the commencement of the case...." 11 U.S.C. § 1306(a)(2).

Accordingly, the post-petition earnings of the Debtors to be paid under the confirmed plan constitute additional property of the estate against which the IRS Notice would apply. Consequently, under the holding in *Academy Answering Service* as applied to the facts of this case the sovereign immunity waiver provision of section 106(a) applies. Any attorney's fees awarded by the Court to the Debtors' counsel, unless assessed against the IRS, would have to be paid out of property of the estate from the Debtors' future earnings. Resultantly, the doctrine of sovereign immunity provides no shield to the IRS against the liability for attorney's fees sought in this case which constitute the Debtors' damages.

### E. DAMAGES UNDER SECTION 362(h)

Pursuant to section 362(h), an individual "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). A court may impose monetary sanctions even

for an inadvertent violation of the automatic stay. *In re Inslaw, Inc.*, 76 B.R. 224, 240 (Bankr.D.Col.1987) and cases cited therein. Moreover, "an award of attorney's fees is appropriate where an initial violation of the stay is followed by Debtor's having to resort to the courts to enforce his rights." *In re Davis*, 74 B.R. 406, 411 (Bankr.N.D.Ohio 1987).

■ The Debtors are individuals and have been injured by the IRS' willful violation of the stay. They were compelled to retain counsel to seek appropriate relief before the Court. The incurring of the additional attorney's fees constitutes actual damages even though no levy was made on property of the estate. As a result of the Debtors' failure to submit any competent evidence or additional proof of actual damages, they are limited in the scope of relief to reasonable attorney's fees and costs necessarily incurred in the filing of the case.

In the supplemental reply, the Debtors cite to a post-*Hoffman* decision entitled *In re Lile*, 103 B.R. 830 (Bankr.S.D.Tex.1989). Under the facts of that case, Judge Mahoney found that the seizure of a debtor's property by the IRS, with the knowledge of the pending bankruptcy, constituted a willful violation of the automatic stay. Consequently, actual and punitive damage awards were appropriate. *Lile* is the first case decided after *Hoffman* which holds the IRS liable under section 362(h) when the IRS has filed a proof of claim and waived sovereign immunity under section 106(a). This Court agrees with that proposition and joins with Judge Mahoney's holding.

However, the *Lile* case is distinguishable on its facts from the case at bar. In the instant matter, the IRS did not levy on or seize any of the Debtors' assets. Rather, the IRS merely threatened a levy. Thus, the Court finds that the Debtors will be made whole solely by an award of actually incurred attorney's fees and costs. No punitive damages will be awarded. Accordingly, the IRS will be assessed attorney's fees for this matter. The Debtors shall submit their attorney's fee statement to this Court by or before September 18, 1989.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the IRS has willfully violated the automatic stay under section 362(a)(1) and (a)(6). The IRS is liable to the Debtors for their actually incurred reasonable attorney's fees and costs pursuant to section 362(h).

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.