**In re Theodore R. PRICE and Ollie P. Price, Debtors.**

**Bankruptcy No. 89 B 00796.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Nov. 26, 1991.

See also 130 B.R. 259.

Robert E. McKenzie, Kevin D. Sprow, McKenzie & McKenzie, Chicago, Ill., for debtors, Theodore R. Price and Ollie P. Price.

Benjamin R. Norris, U.S. Dept. of Justice, Washington, D.C., for U.S. Dept. of Justice.

Mayer Y. Silber, I.R.S., Office of Dist. Counsel, Chicago, Ill., for I.R.S.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes on to be heard on a petition for turnover order and supplemental relief filed by Theodore R. Price and Ollie P. Price (the "Debtors"), against the United States of America through its Internal Revenue Service (the "IRS"). The ultimate issue is whether the delay of the IRS in processing the Debtors' tax refund claims for two post-petition tax years constitutes a willful violation of the automatic stay pursuant to 11 U.S.C. § 362(h). For the reasons set forth herein, the Court, having considered the pleadings, documents and affidavit submitted, denies the relief sought and finds no willful violation of the automatic stay.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(a) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E) and (O). The Debtors incorrectly styled the relief sought as a petition for turnover. Pursuant to Federal Rule of Bankruptcy Procedure 9014, a contested matter is brought by way of motion, not petition. The relief requested under section 362(h) is properly sought pursuant

to Rule 9014. However, with certain exceptions not applicable here, Federal Rule of Bankruptcy Procedure 7001(1) requires proceedings to recover money to be pursued through formal adversary proceedings, rather than under Rule 9014. Such procedural requirements are followed in the Seventh Circuit, *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir.1990), except where the parties expressly agree to waive the requirements of a formal adversary proceeding and proceed by way of a contested matter or motion. *In re Pence*, 905 F.2d 1107, 1109 (7th Cir.1990).

## II. FACTS AND BACKGROUND

Prior Opinions of this Court and the district court dealt with another automatic stay violation in this case by the IRS. That violation arose from a post-petition notice of intention to levy to enforce a pre-petition unpaid tax claim made in 1989, after the Debtors' Chapter 13 plan was confirmed, and after the IRS had filed a timely proof of claim regarding the 1986, 1987, and 1988 unpaid income tax liabilities of the Debtors. *See In re Price*, 103 B.R. 989 (Bankr. N.D.Ill.1989), *aff'd*, 130 B.R. 259 (N.D.Ill. 1991). Subsequent to these decisions, the Debtors filed the instant matter on May 29, 1991, alleging additional violations of 11 U.S.C. § 362(a)(3) and (a)(6).

The Debtors assert that the IRS offset their 1989 tax refund claim of $63.00 and allegedly refused to apply, as requested, the Debtors' $275.00 1990 tax year overpayment to their 1991 estimated tax liability. Attached to the petition was an April 29, 1991 notice from the IRS to the Debtors concerning tax year 1990, which stated in relevant part: "[y]our tax return for the above tax year shows you want $275.00 of the amount you overpaid applied to your 1991 estimated tax. However, we applied only $.00 to that tax because we adjusted your account. The correction will be explained in a separate notice." The Debtors seek a turnover of $338.00, plus statutory interest; a finding that the IRS is liable for punitive damages under section 362(h); and attorneys' fees and costs. The turnover relief sought was effectuated during the

pendency of this matter, and will not be further addressed.

In its response, the IRS denies any liability, raising the following points: (1) there was no setoff of either claimed overpayment; (2) the Court lacks jurisdiction, and the IRS has not waived sovereign immunity pursuant to 11 U.S.C. § 106; (3) the Debtors' claims for refund are subject to the requirements of Treasury Regulation § 301.6402-4 which gives the IRS certain discretion to determine claimed refund payments or credits against subsequent tax liability; (4) the Debtors have not suffered any actual damage because the 1991 calendar tax year is not closed, and the tax refunds were in process; and (5) the Debtors' attorney is a former IRS employee who is, or should be, well acquainted with the procedures concerning tax refunds, and who failed to contact the IRS to resolve this matter in an expedited out-of-court manner.

In their reply, the Debtors argue that even if the IRS did not make a formal setoff or application of the Debtors' overpayments against their pre-petition unpaid tax liability for prior tax years, various authorities hold that the retention of the tax refunds is the equivalent of a setoff, and hence, a violation of section 362. The Debtors further contend that on June 26, 1991, co-counsel for the IRS admitted in open court that the check for the 1989 tax refund was kept, "in limbo until the Debtor would ask," and that he further admitted, "as soon as we received this motion, the people across the street took care of that right away. The checks have been issued."

A supplemental memorandum of authority filed on behalf of the IRS included computer generated records of the Debtors' tax accounts for various years. These documents are of uncertain significance and import in light of the lack of explanatory testimony relative to the entries contained thereon. More informative was an affidavit of Alver Williams ("Williams") of the Special Procedures Branch in the Chicago office of the IRS. Williams explained the tax refund special procedures employed in this matter after review of the Debtors'

relevant records. Williams stated that after the IRS receives notice of a bankruptcy filing, certain codes are entered into its computer or integrated data retrieval system. After that occurs, a debtor's tax matters can no longer be processed through the computer system. A separate file is then opened and assigned out for "hand processing" of all tax matters. In this case, that process also involved a shift of the records from the IRS Service Center in Kansas City, Missouri to its Chicago office. According to Williams, one of the results of taking a debtor's tax matter out of the computer is to prevent an automatic offset from taking place, not to halt a refund. Furthermore, Williams stated it is impossible to issue a computer generated refund to a Chapter 13 debtor because the manual processing of such tax matters cannot be automated. They must first be checked to see if the debtor is making current plan payments and if a trustee appointed in the case has a right to claim a refund. According to Williams, only after these two inquiries have been made can the IRS determine whether a debtor who files a refund claim is properly entitled thereto.

The Debtors concede there is no showing from the records furnished that there was any formal setoff or freeze. They contend, however, that the facts indicate a violation of the automatic stay. The Debtors conclude that the IRS "institutionalize the non-processing of refunds to debtors in bankruptcy." They further contend that the records show that the IRS posted the Debtors' 1989 return on May 21, 1990, and the 1990 return on April 29, 1991, but waited an unreasonably long period of time until July 2, 1991 to process and pay the refunds, and did so only after the instant matter was filed. Thus, the Debtors conclude that the IRS has no right to holdback the refunds, notwithstanding the IRS's manual processing of bankruptcy debtors' returns. In the Debtors' view, this constitutes impermissible exercise of control over property of the estate violative of section 362(a)(3). Moreover, the Debtors state the processing of the 1990 tax return produced the April 29, 1991 notice, which gave no explanation for the reason of not issuing the refund or credit for that tax year. Furthermore, the Debtors argue that the IRS was not auditing either return, nor has it alleged any reason why it failed to more timely process the refund claims. Hence, the Debtors claim they had to, "go through the IRS bureaucratic maze to reach its special procedures branch before the special procedures branch will begin evaluation of the returns and claim overpayment."

This matter was set for evidentiary hearing on October 23, 1991. Neither party, however, offered any evidence or testimony, but rested on the pleadings and papers filed.

## III. DISCUSSION

### A. 11 U.S.C. § 106 SOVEREIGN IMMUNITY AND JURISDICTIONAL CHALLENGE

■ One of the initial points raised by the IRS is its persistent contention that this Court lacks jurisdiction over this matter, and that it has not waived its sovereign immunity under 11 U.S.C. § 106. The Court's prior Opinion carefully considered the sovereign immunity defense and determined that same had been waived based on the fact that the IRS filed a proof of claim. *Price*, 103 B.R. at 993–995. That holding remains applicable to the instant contested motion. Similarly, the IRS's contention that the matter at bar does not involve property of the estate is likewise rejected. 11 U.S.C. § 1306 defines property of the estate to include in a Chapter 13 case, in addition to that defined in section 541, "earnings from services performed by the debtor after the commencement of the case...." 11 U.S.C. 1306(a)(2). It is precisely the earnings from the post-petition services performed by the Debtors in 1989 and 1990 that were the basis upon which the income tax returns were prepared and filed, and upon which the tax liabilities were determined, along with the attendant refunds subsequently claimed and paid. *Price*, 103 B.R. at 995.

■ Furthermore, even following the line of the argument of the IRS, that if the

terms of the Debtors' confirmed plan revests such property of the estate back into property of the debtor pursuant to 11 U.S.C. § 1327(b), and the actions of the IRS are found not to violate the automatic stay because of the provisions of section 362(a)(5) under the authority of *In re Lambright,* 125 B.R. 733 (Bankr.N.D.Tex.1991) and *In re Petruccelli,* 113 B.R. 5 (Bankr. S.D.Cal.1990), as well as other authorities cited therein, all such arguments and authorities do not limit or negate this Court's jurisdictional power and authority, but relate only to the proper exercise thereof.

■ Moreover, under 11 U.S.C. § 505(a)(1), the bankruptcy court has jurisdiction over related tax claims, whether or not the tax has been paid, and whether or not the tax matter is before another court. There is no showing that the tax matters at bar were adjudicated by any other court of competent jurisdiction that would divest the bankruptcy court of its jurisdiction pursuant to section 505(a)(2)(A). The provisions of section 505(a)(2)(B) prohibiting the bankruptcy court from determining any right of the bankruptcy estate to a tax refund before the earlier of 120 days after the trustee properly files a tax refund claim, or a determination by the IRS denying the refund claim, is inapplicable. Hence, the Court rejects the arguments of the IRS. The Court has both jurisdiction over the subject matter and of the parties, and the IRS has waived sovereign immunity.

### B. 11 U.S.C. § 363(a)(3) and (a)(6)

Under section 362(a)(3), the filing of a petition in bankruptcy operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Furthermore, under section 362(a)(6), a bankruptcy petition operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). Although not argued by the Debtors, it is worthy of note as mentioned in *Lambright* and *Petruccelli,*

that the automatic stay protects property of the debtor under section 362(a)(5) only if the allegedly wrongful acts are to collect on a pre-petition debt. Subject to the provisions of 11 U.S.C. § 553, once the automatic stay applies, the IRS cannot unilaterally exercise its rights to setoff without leave of court. *See* 11 U.S.C. § 362(a)(7).

■ From the pleadings, including the records supported by the Williams affidavit, it is apparent that section 362(a)(6) is inapplicable to serve as a statutory basis for the relief sought by the Debtors. There is no hint that the timing of the processing of the Debtors' refund claims was the equivalent of a setoff, freeze, or some other attempt to recover the claims of the IRS against the Debtors for the pre-petition tax years. The Debtors' 1989 and 1990 tax records show that the overpayments claimed were not actually setoff. Rather, on July 2, 1991, the Debtors were issued two checks: $70.96 ($63.00 refund for 1989 tax year, plus $7.96 statutory interest) and $280.41 ($275.00 refund for 1990 tax year, plus statutory interest of $5.41). Thus, the inquiry narrows to whether the delay by the IRS in processing the claimed refunds constitutes a proscribed act to exercise control over property of the estate violative of section 362(a)(3).

■ Decisions in other cases have held that if the IRS retains a tax refund due a debtor in a "suspense account," same constitutes a violation of the automatic stay. *In re Mealey,* 16 B.R. 800, 802 (Bankr. E.D.Pa.1982). In *Mealey,* in contrast to this case, the IRS stipulated that it had placed funds for the debtor's tax refund claim under a freeze code pending the lifting of the automatic stay, but asserted that did not amount to a setoff. The court noted that the artificial measure such as a bookkeeping entry cannot be determinative of whether or not a setoff has occurred. To rule otherwise would allow a creditor to circumvent the automatic stay by merely delaying the entry of a setoff in its books, thereby allowing the creditor to hold onto the funds until the case is closed, rendering monies unavailable for distribution to credi-

tors or for use by debtors. Significantly, Judge King stated that "[a] setoff is deemed to have occurred when the creditor has sufficiently demonstrated an intention to effectuate a setoff." *Id.* at 802. This principle is applicable here.

■ The Debtors also rely on *In re Norton,* 32 B.R. 698 (E.D.Pa.1982), *aff'd in part and rev'd in part,* 717 F.2d 767 (3d Cir.1983). The court held that upon confirmation of the plan, the IRS was bound thereto pursuant to section 1327 and to the payment schedule provided therein that would satisfy its prepetition claim in full. Furthermore, unlike the facts at bar, the IRS claimed proper retention of a tax overpayment as extra security on the underlying tax debt. No such contention or argument has been made here. The question in *Norton* was then unclear as to whether the retention of tax overpayments constituted a setoff in violation of the automatic stay. Consequently, the court found that the IRS did not have a fair warning that its retention of funds would be a violation of the automatic stay. Therefore, the bankruptcy court order holding the IRS in contempt and imposing a fine was reversed.

In addition, the Debtors rely on *United States v. Reynolds,* 764 F.2d 1004 (4th Cir. 1985). In *Reynolds,* the IRS filed a complaint seeking relief from the automatic stay to permit it to setoff the retained portion of the debtor's 1980 tax refund against the debtor's unpaid 1979 tax deficiency, interest and penalty. The bankruptcy court dismissed the complaint and ordered the IRS to turnover the funds to the debtors. That determination was affirmed by the district court. On further appeal, the Fourth Circuit held that the action of the IRS in retaining the debtor's tax refund in a "suspense account" was a setoff and thus a violation of the automatic stay under section 362(a)(7).

■ Neither *Mealey, Norton,* nor *Reynolds* precisely fit the facts of the case at bar. There is no showing in the record that the claimed tax refunds for the two post-petition tax years were held in a "suspense account," "frozen" or setoff in any way. The delay in processing the refund

claims is central to this matter. It is most significant that the Debtors have elected to rest on the mere allegations in the moving papers and not offer any evidence. The only probative materials furnished the Court having any evidentiary weight are the unrebutted affidavit of Williams and partially legible copies of the IRS computer generated' records relative to the Debtors' tax accounts. The latter are of uncertain significance and lack any testimonial or other evidentiary foundation for the assertions made in the pleadings by the Debtors. A setoff is deemed to have occurred, per *Mealey,* when the creditor has sufficiently demonstrated an intention to effectuate a setoff. Only the Williams affidavit speaks to the intent inquiry. It is to the contrary, is unrebutted, and affirms that the manual processing of the Debtors' tax returns is done by the IRS to avoid an automatic setoff which the computer system would otherwise effectuate.

### C.  11 U.S.C. § 362(h)

Section 362(h) provides a remedy for aggrieved natural persons to receive awards of their actual damages, including costs and attorneys' fees, and where appropriate, punitive damages when they have suffered a willful violation of the automatic stay. *In re Prairie Trunk Railway,* 125 B.R. 217, 220 (Bankr.N.D.Ill.1991). Willful is defined as a "deliberate and intentional act done with the knowledge that the act is in violation of the stay." *In re Forty–Eight Insulations, Inc.,* 54 B.R. 905, 909 (Bankr. N.D.Ill.1985); *see also In re Allen,* 83 B.R. 678, 681 (Bankr.E.D.Mo.1988); *In re Wagner,* 74 B.R. 898, 903 (Bankr.E.D.Pa.1987).

It is undisputed under the history of this case that the IRS is a creditor, and at all relevant times knew of the Debtors' pending bankruptcy proceeding. It is well aware of the automatic stay and the Court's ruling on its prior actions with respect to its earlier notice of intent to levy. In the instant matter, however, there has been no notice of intent to levy, nor has there been any wrongful actual levy or seizure as was the case in *In re Carlsen,* 63 B.R. 706 (Bankr.C.D.Cal.1986) or *In re*

*Lile,* 103 B.R. 830 (Bankr.S.D.Tex.1989). Similarly, there has been no intercept of a debtor's tax overpayment as occurred in *In re Stucka,* 77 B.R. 777 (Bankr.C.D.Cal. 1987). The record before the Court is bereft of any showing of an active collection effort by the IRS to enforce its claim for pre-petition taxes or the post-petition taxes, which have apparently been paid in due course. This matter is likewise distinguishable from the recent decision *In re Taborski,* Nos. 88 B 1624, 89 A 587, 1991 WL 236872, 1191 Bankr. LEXIS 1393 (Bankr. N.D.Ill. Sept. 16, 1991). There, Judge Katz held that a stay violation occurred upon an IRS intercept of the debtors' 1987 and 1988 tax refunds, which occurred in May of 1989. An adversary complaint and two motions for sanctions were filed, which belatedly prompted an IRS release of the tax refunds in November 1990. Furthermore, to add more fuel to the litigation fire, the IRS filed a notice of federal tax lien on the debtors' property while the dispute over the refunds was ongoing. Such flagrant conduct of the IRS demonstrated in *Taborski, Lile, Carlsen,* and *Stucka* is distinguishable from its delay in processing and issuing two refund checks in this matter.

■ Although the delay in processing the nominal refund for tax year 1989, between posting of same in 1990 and issuance of the check in July, 1991 is highly suspect (especially in light of the timing of Judge Rovner's affirmance on April 1, 1991, less than two months prior to the filing of this matter), the Court lacks any evidence showing that same was an intentional or deliberate act on the part of the IRS or its agents. Mere suspicions are not evidence. The Court will not infer a wrongful intent without some evidence to show the delay was not perhaps attributable to unintentional oversight or bureaucratic ineptitude. Unlike the facts in the prior matter wherein the IRS admitted the issuance of a notice of intent to levy was a technical violation of the automatic stay, the notice issued in this matter indicates an adjustment to the account for the 1990 tax year. Another portion of the notice some what cryptically stated: "reduced amount applied to your estimated tax." Although no separate ex-

planatory notice followed, the IRS within weeks, actually issued the refund checks for both tax periods. On these facts, the Court will not conclude that the unexplained delay in processing these refund claims constitutes a willful violation of the automatic stay.

■ Furthermore, the IRS asserts that the Debtors' refund claims do not ripen into a right until such time as the refund claims were manually processed. Accordingly, the IRS contends the only appropriate remedy is for interest to be paid on the appropriately calculated refund at the statutory rate pursuant to 26 U.S.C. § 6621. When a claim for refund is not granted, the remedy available is to bring suit pursuant to 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422 after six months have passed from the date of the filing of the claim for refund. *See* 26 U.S.C. § 6532(a)(1). Moreover, Treasury Regulation § 301.6402–4 provides:

> In any case in which the district director or the director of the regional service center determines that payments by the taxpayer (made within the period prescribed for payment and before the filing of the return) are in excess of the amount of tax shown on the return, he may credit or refund of such overpayment without awaiting examination of the completed return....

Thus, the IRS is vested by statute and regulation with certain discretionary authority within which it initially determines whether a taxpayer's claim for tax refund ripens into a right thereto.

## IV. CONCLUSION

The Debtors' failed to meet the burden of proof under section 362(h). The belated processing of the refund for the 1989 tax year and the quicker processing of a refund for the 1990 tax year, both paid on July 2, 1991, may be close to the line of a stay violation for purposes of section 362(h). Notwithstanding this delay, in the absence of any other evidence, the Court will not infer that the delay was a deliberate stall in violation of the automatic stay. The Court has previously opined that the

principal purpose of the automatic stay provisions of section 362(a) is to provide a shield, principally for debtors, to facilitate the concept of a fresh start and to enhance a prospect for reorganization. *In re Prairie Trunk Railway,* 112 B.R. 924, 930 (Bankr.N.D.Ill.1990). As a corollary, the Court found nothing in the overall legislative history to warrant the conclusion that the addition of section 362(h) by the 1984 amendments was intended to act as a punitive sword. *Id.* at 931. Before debtors and other protected parties can invoke the benefits and remedies provided by section 362(h), a willful violation must be shown by a preponderance of the evidence. The Debtors failed to establish the requisite intent of the IRS. Hence, the relief sought is hereby denied.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.