

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-20-1998

# In Re: Continental

Precedential or Non-Precedential:

Docket 97-7109

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"In Re: Continental" (1998). *1998 Decisions.* Paper 15.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/15

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 20, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-7109

IN RE: CONTINENTAL AIRLINES,

        Debtor

UNITED STATES OF AMERICA,

        Appellant

v.

CONTINENTAL AIRLINES

        THOMAS E. ROSS,

        Trustee

An Appeal from the United States District Court
for the District of Delaware
Civil Action No. 93-cv-00485

Argued December 2, 1997

Before: COWEN, McKEE and ROSENN, Circuit Judges.

(Opinion Filed January 20, 1998)

        Robert M. Loeb (Argued)
        Room 3617 Main
        United States Department of Justice
        Civil Division, Appellate Staff
        10th & Pennsylvania Avenue, N.W.
        Washington, D.C. 20530-0001
        Counsel for Appellant

            Gordon B. Conn, Jr. (Argued)
            Laura D. Jones
            Robert S. Brady

            Young, Conaway, Stargatt & Taylor
            P.O. Box 391
            Rodney Square North, 11th Floor
            Wilmington, DE 19899-0391
            Counsel for Appellee

OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal presents an issue pertaining to the right of set-off by a pre-bankruptcy creditor after a plan of reorganization has been approved by the bankruptcy court. Continental Airlines and its affiliates (Continental or Debtors) filed petitions for reorganization under Chapter 11 of the Bankruptcy Code. In April, 1990, the Bankruptcy Court confirmed the Debtors' Joint Plan of Reorganization. In addition to ten federal government agencies that had timely filed proofs of claim, the General Services Administration of the United States (GSA or Government) filed an amended proof of claim on May 25, 1993, after the confirmation of the plan, and specifically asserted a right of set-off for the first time. The Bankruptcy Court held that the Government could not exercise set-off rights with respect to $4.8 million due the Debtor and ordered it to pay the sum to the Debtors. The Government appealed to the United States District Court for the District of Delaware which affirmed. The Government then timely appealed to this court.[1] We also affirm.

_____

1. The bankruptcy court had jurisdiction over this matter pursuant to 28 U.S.C. S 157(b). The district court had jurisdiction to review the bankruptcy court's decision pursuant to 28 U.S.C.S 158(a). This Court has appellate jurisdiction of the district court's order pursuant to 28 U.S.C. S 1291.

I.

On December 3, 1990, Continental filed for Chapter 11 reorganization in the United States Bankruptcy Court for the District of Delaware. Subsequently, each of ten agencies of the United States Government filed separate proofs of claim with the bankruptcy court for monies owed to them by Continental, which in aggregate totaled approximately $14.5 million. Continental submitted its revisedfinal reorganization plan to the bankruptcy court on January 13, 1993. Although the court resolved several objections by the various agencies to Continental's proposed plan, no government agency sought to amend its proofs of claim to assert any additional claims, including a right to set-off the $4.8 million owed by GSA. Accordingly, the bankruptcy court entered its order confirming the plan on April 16, 1993 without any objection from the Government.

Under the confirmed plan, the federal agencies were treated as general unsecured creditors, and were entitled to recover approximately 4.8% of their total claims. The Government did not appeal the confirmation order. Meanwhile, in August 1992, in a suit unrelated to Continental's bankruptcy petition, the United States District Court for the District of Columbia ordered GSA to return money it had wrongfully withheld from several airlines, including approximately $4.8 million withheld from Continental.2 The Government sought a stay of the district court's order in the United States Court of Appeals for the Federal Circuit. On April 12, 1993, the Federal Circuit issued an order denying the Government's request for a stay, but instead permitted it to deposit the disputed sum into the registry of the bankruptcy court while the Government attempted to set-off the $4.8 million it owed against the $14.5 million in claims due its agencies.

Subsequently, on May 28, 1993, the GSA filed a motion with the bankruptcy court seeking to set-off its claim against the funds deposited in the bankruptcy court's registry. On September 30, 1993, the bankruptcy court

_____

2. Alaska Airlines, Inc. v. Austin, 801 F. Supp. 760 (D. D.C. 1992). The facts of Alaska Airlines, Inc. v. Austin are not relevant to the issues raised on this appeal.

denied the Government's motion, ruling that the Government could not exercise its set-off rights with respect to the $4.8 million and ordered it to pay the money to the Debtor. After the Government appealed, the District Court for the District of Delaware affirmed the bankruptcy court's ruling.

II.

This Court's review of a district court's disposition of a bankruptcy appeal is plenary. The Court of Appeals exercises "the same review of the district court's decision as that exercised by the district court. The bankruptcy court's findings of fact are reviewable only for clear error. Legal determinations are subject to plenary review." In re Continental Airlines, 125 F.3d 120, 128 (3d Cir. 1997) (internal citations omitted); accord In re Engel, 124 F.3d 567, 571 (3d Cir. 1997).

The Government argues that the $4.8 million it deposited into the registry of the bankruptcy court and which the Government alleged it was entitled to set-off3 against the $14.5 million owed by Continental were not "property of the [bankruptcy] estate." The Government contends that the bankruptcy court's confirmation of Continental's reorganization plan did not extinguish its right of set-off vis-a-vis the $4.8 million held in the court's registry.4 The Government principally bases its argument on Citizens Bank of Maryland v. Strumpf, 116 S. Ct. 286 (1995), which it argues overrules this Court's holding in United States v.

_____

3. 11 U.S.C. S 553 which governs set-offs does not define the term. The right of set-off, as generally understood, simply means that "the debts of two persons who are mutually indebted may be set off against each other." Brian A. Blum, Bankruptcy and Debtor/Creditor S 22.2, at 348 (1993). "Its central premise is an ancient one well-grounded in practical logic: If A is indebted to B, and B is likewise indebted to A, it makes sense simply to apply one debt in satisfaction of the other rather than require A and B to satisfy their mutual liabilities separately." 5 Collier on
Bankruptcy P 553.01 (Lawrence P. King ed., 15th rev. ed. 1997).

4. For purposes of this discussion it is unnecessary to determine whether the Government did have a valid right of set-off; thus, the right will be assumed.

4

Norton, 717 F.2d 767 (3d Cir. 1983), heavily relied on by the bankruptcy court and the district court.

Norton held that a creditor's withholding of funds subject to a set-off violated the Bankruptcy Code's automatic stay provision,5 and also adopted the viewpoint that set-off is not permitted after confirmation of a bankruptcy plan of reorganization. In Norton, under facts similar to those presented on this appeal, this court held that the Government could not offset an outstanding tax refund against an outstanding tax liability after confirmation of the debtor's plan. In their plan, as here, the debtors made no provision for set-off. Emphasizing that the Government never objected to the plan, we concluded that it would be unreasonable for the Government to retain the tax refund as security for the debtors' obligation. Instead, we require the Government to pay over the refund and accept treatment under the plan as an unsecured creditor.

The Government primarily contends that this case is closely analogous to and governed by the recent decision of the United States Supreme Court in Strumpf and thus is not controlled by Norton. In Strumpf, the Supreme Court merely held that a bank's pre-confirmation temporary withholding of a debt that it owed a depositor who was in bankruptcy, in order to protect its set-off rights, did not violate the automatic stay. The Court explained that the bank's "temporary refusal to pay was neither a taking of possession of [the depositor/debtor's] property nor an exercising of control over it, but merely a refusal to perform its promise." Id. at 290. Norton, therefore, is only overturned to the extent that it held that "state law . . . determine[s] when a set-off has occurred." 717 F.2d at 772 (emphasis added). Today, under Strumpf,"the question whether a set-off . . . has occurred is [now] a matter of federal law;" a bank's temporary withholding of funds on

_____

5. The automatic stay, 11 U.S.C. S 362(a), is "an injunction that arises by
operation of law immediately upon the commencement of the bankruptcy
case. . . . Its effect is to impose a wide-ranging prohibition on all activity
outside the bankruptcy forum to collect pre-petition debts from the
debtor or to assert or enforce claims against the debtor's pre-petition
property or estate property." Blum, Bankruptcy and Debtor/Creditor
S 16.1, at 231.

deposit subject to a set-off does not violate the automatic stay. 116 S. Ct. at 289 (emphasis added). The Government's position, in this case, mischaracterizes and overemphasizes both the relevance and importance of Strumpf. It reaches this conclusion by incorrectly arguing that pursuant to Strumpf, because the $4.8 million was still held in the registry of the court at the time Continental's reorganization plan was confirmed, "the funds plainly were not `property of the estate' at that time." Thus, the Government's argument continues, when the court confirmed the plan, the funds did not vest "free and clear" in Continental as property of the bankruptcy estate. Building on this premise, the Government concludes that the April 16, 1993 confirmation of Continental's plan did not extinguish GSA's right to set-off the $4.8 million owed to Continental against its $14.5 million in claims due its agencies.

As Continental points out, however, the Supreme Court in Strumpf expressly refused to address the issue of the effect of confirmation on set-offs, which is dispositive to the resolution of this appeal. In a footnote in Strumpf, the Supreme Court unequivocally "decline[d] to address [the] contention . . . that the confirmation of [a bankruptcy reorganization plan] preclude[s] [the] exercise of [a] set-off right." 116 S. Ct. at 290 n.**. This case, therefore, is not controlled by Strumpf because the Government here filed its motion to exercise its alleged set-off in the bankruptcy court almost six weeks after confirmation of Continental's reorganization plan (and over nine months after the district court held the Government liable to Continental for the $4.8 million in the Alaska Airlines case).

Finally, the Government's contention that the Norton court "incorrectly considered the funds held by the creditor to be property of the estate" which led to its"erroneous ruling that confirmation of the plan extinguishes a creditor's set-off rights" is without merit. (citing 11 U.S.C. SS 1141(b), 1327 and Norton, 717 at 774). The Government's argument makes two critical mistakes and thus misses the cumulative effect of the Norton and Strumpf holdings. First, although Norton implicitly held that the funds withheld by the creditor subject to set-off were

6

"property of the estate," today under Strumpf, the relevant "property of the estate" is instead the bankrupt debtor's claim to the funds as opposed to the possession of the physical funds themselves.

Second, the relevant funds at issue in this case are clearly distinguishable from those in both Norton and Strumpf. In both of those cases, the creditor retained possession of the funds; here the Government deposited the $4.8 million into the registry of the court pending an appeal. As this Court has noted, such deposits are comparable to the res of a trust. The "court acts as trustee and is charged with the duty of determining the beneficiaries pursuant to the appeal. . . . [T]he [Government] has no beneficial interest (in the deposit[ ]) [while the court] holds the money as . . . trustee for the rightful owners when and if they are determined by the court." Mid-Jersey Nat'l Bank v. Fidelity-Mortgage Investors, 518 F.2d 640, 643-44 (3d Cir. 1975). Thus, contrary to the Government's assertion, its set-off rights in the funds did not remain unaffected by confirmation of the plan because the Government no longer retained an interest in them; under Norton, its set-off right was extinguished by the confirmation of the plan. Although the actual funds themselves may not have passed as property of the estate, upon confirmation of the plan, Continental did acquire a claim or interest in them subject only to final resolution of the Government's appeal. Norton continues to have vitality and survives Strumpf.

The Government argues before us, however, that to the extent that Norton may control and hold that the confirmation of the plan extinguishes all set-off rights not provided for in the plan, it was wrongly decided. The Government asserts that the Bankruptcy Code's set-off provision in S 553 states in the clearest of terms that the rest of the Bankruptcy Code "does not affect" a creditor's right to set-off provided that the obligations between creditor and debtor are mutual and that both obligations arose prior to the commencement of the reorganization proceedings. Relying on 11 U.S.C. S 553(a), the Government, in effect, maintains that a pre-petition creditor's right to set-off may be exercised without regard to

7

the status of the bankruptcy proceedings and the confirmation of the debtor's reorganization plan. The Government argues that In re De Laurentiis Entertainment Group, Inc., 963 F.2d 1269 (9th Cir. 1992), supports its position. In De Laurentiis, the court considered the tension between 11 U.S.C. S 553 and 11 U.S.C. S 1141 of the Bankruptcy Code. Section 1141 provides for the discharge of pre-petition debts after completion of a bankruptcy proceeding.6 It also provides that any assets retained under the administration of reorganization are free and clear of any pre-petition debts. 11 U.S.C. S 5537 protects the right of a creditor to offset a mutual debt. After analyzing the statutory sections and the applicable cases in other jurisdictions, the De Laurentiis court concluded that S 553 must take precedence over S 1141. Although uncertain, it also believed that the language of S 553 "seems intended to control notwithstanding any other provisions of the Bankruptcy Code." 963 F.2d at 1276-77. The court, however, predicated its decision upon the particular facts in

_____

6. 11 U.S.C. S 1141 provides in pertinent part:

      (a) Except as provided in subsections (d)(2) and (d)(3) of this section,
      the provisions of a confirmed plan bind . . . any creditor . . . whether
      or not such creditor . . . has accepted the plan.

      . . .

      (c) Except as provided in subsections (d)(2) and (d)(3) of this section
      and except as otherwise provided in the plan or in the order
      confirming the plan, after confirmation of a plan, the property dealt
      with by the plan is free and clear of all claims and interests of
      creditors. . . .
      (d)(1) Except as otherwise provided in this subsection, in the plan,
      or in the order confirming the plan, the confirmation of a plan --

      (A) discharges the debtor from any debt that arose before the date
      of such confirmation . . . . (emphasis added).

7. 11 U.S.C. S 553 provides in pertinent part:

      (a) Except as otherwise provided in this section and in sections 362
      and 363 of this title, this title does not affect any right of a creditor
      to offset a mutual debt owing by such creditor to the debtor that

arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . . (emphasis added).

8

the case before it, including the creditor's diligent pursuit of its set-off claim before the bankruptcy court "during the entire period the reorganization plan was being considered." Id. at 1277. The court noted that the creditor, NBC, had filed a proof of claim and petition for relief from stay.

We believe that the material facts in De Laurentiis distinguish it from the case before us. We recognize that a right of set-off is preserved under S 553 in a bankruptcy proceeding but we believe that the right must be exercised by the creditor in timely fashion and appropriately asserted in accordance with other provisions of the Bankruptcy Code. Unlike the Government in this case, NBC, the creditor in De Laurentiis, timely filed its proof of claim in the bankruptcy court and claimed its right of set-off against its debt to the Debtor. NBC also filed a motion for relief from the automatic stay prior to confirmation of the plan. The Government did neither of these in this case. In the instant case, the plan of reorganization proceeded on the justifiable assumption that the reorganized debtor faced no set-off claim. On the other hand, in De Laurentiis, the bankruptcy court converted NBC's set-off claim into an adversary proceeding and NBC "pursued its claim diligently before the bankruptcy court at all times." Id. at 1271. There was no adversary proceeding here prior to plan confirmation, and the facts in both cases are materially different.

The Government also cites to In re Davidovich, 901 F.2d 1533 (10th Cir. 1990) and two bankruptcy court cases. Davidovich involved an arbitration debt to the debtor from his former law partner, and the debtor, under the facts of the case, had notice of the set-off claim. The court, however, only discussed the right of set-off under S 553 but made no analysis of the provisions of S 1141 of the Bankruptcy Code. As to the bankruptcy court cases, In Re Weigand, 199 B.R. 639, (Bankr. W.D. Mich. 1996) relies largely on De Laurentiis only, and the facts of In re Womack, 188 B.R. 259 (Bankr. E.D. Ark. 1995) are distinguishable. Womack, unlike this case, involved a secured debt of the Government, income tax liability, payment of which was provided by the confirmed plan. The debtors had a refund due from the Government for an

9

overpayment on a subsequent tax year. After the confirmation of the plan, the Government sought to set-off the refund against the debt due it under the plan and the bankruptcy court permitted it. The bankruptcy court concluded that the set-off might in fact be of benefit to the debtors and to some of the creditors because the reduction of the claim of the United States under the plan will permit acceleration of payment to other creditors. Id. at 262. Because the plan provided for the ultimate payment of the debt due the Government, allowing the set-off merely accelerated its payment, and there was no need to discuss the conflict between S 553 and S 1141 of the Bankruptcy Code.

Thus, we are not persuaded by the cases relied on by the Government that S 1141 may be disregarded when a set-off is asserted. Norton did not extinguish non-secured set-off claims, nor do we, provided they are timely asserted. In the instant case, the Government would have the court treat a non-secured claim as a secured claim to the disadvantage of all other general creditors. The Government here has no statutory secured claims as it did in Womack for income tax liability. Furthermore, allowing the Government under the facts of this case to come forward after the plan of reorganization has been confirmed and sua sponte decide that it has a valid set-off without timely filing a proof of claim and asserting the set-off in the reorganization proceedings, has a probability of disrupting the plan of reorganization. It may also unnecessarily protract the bankruptcy proceedings and consume judicial resources. Furthermore, it is unfair to other creditors and the debtor, and can conceivably undermine the plan of reorganization and the objectives and structure of the Bankruptcy Code.

Thus, because the Government attempted to exercise its set-off right after confirmation of the plan, the Government's remaining arguments are unpersuasive. Norton still controls in this Circuit and precludes the Government's exercise of any set-off right it may have had once Continental's plan was approved. As the Government correctly notes, "a panel of this court is bound to follow the holdings of published opinions of prior panels of this court unless overruled by the court en banc or the holding is

10

undermined by a subsequent Supreme Court case."
Nationwide Ins. Co. v. Patterson, 953 F.2d 44, 46 (3d Cir.
1991).

III.

To summarize, we reaffirm the ruling in Norton and hold
that the right of a creditor to set-off in a bankruptcy
reorganization proceeding must be duly exercised in the
bankruptcy court before the plan of reorganization is
confirmed; the failure to do so extinguishes the claim.

Accordingly, the judgment of the district court upholding
the bankruptcy court's ruling that the Government's set-off
rights, if any, were extinguished upon confirmation of
Continental's Plan of Reorganization will be affirmed. Costs
taxed against the appellant.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

11