In re GORDON SEL–WAY,
INC., Debtor.

United States of America, Appellant,

v.

In re Gordon Sel–Way, Inc., Appellee.

No. 98–CV–60512–AA.

United States District Court,
E.D. Michigan.

Aug. 31, 1999.

Robert A. Peurach, John S. Regan, Fitzgerald & Dakmak, Detroit, MI, for Gordon Sel–Way, Inc.

Thomas P. Cole, Department of Justice, Tax Division, Washington, D.C., for United States of America.

## OPINION AND ORDER

STEEH, District Judge.

The government has appealed an order of the bankruptcy court denying its motion for a setoff. The setoff at issue arises from an underlying Chapter 11 bankruptcy petition filed by Gordon Sel–Way, Inc. (Sel–Way) which resulted in confirmation of a Plan of liquidation and reorganization. As part of Sel–Way's reorganization Plan, the government's unsecured claim for employment tax penalties was grouped with the claims of other unsecured creditors and treated as a Class 5 claim. Ultimately, all Class 5 creditors were paid 20% of their claims, except for the government. If the government had received its 20% share, which it undisputably has not, it would have received $96,586. Sel–Way disputed the government's claim through six years of litigation, but ultimately lost. There is no longer any dispute that the government is entitled to be paid for employment tax penalties. The problem now is that Sel–Way no longer has the funds to pay the government's share as it distributed all its assets to the other Class 5 creditors while it disputed the government's entitlement to tax penalties. The government now seeks to recoup some of its claim through an offset of the unemployment tax refund owing to Sel–Way. Sel–Way is due and owing about $90,000 for the overpayment of unemployment taxes which occurred after confirmation of the reorganization Plan. Under the present bankruptcy scheme, those monies will go to pay administrative expenses of the estate first, which means that Sel–Way's lawyers and accountants will be paid from the tax refund before the government is paid on its claim. The bankruptcy court erroneously denied the setoff on the grounds that the refund arose after Plan confirmation, despite the fact that Sel–Way's debt to the government survived Plan confirmation and has not been paid. For the reasons explained below, the government is entitled to the setoff and the bankruptcy court's opinion must be reversed.

## BACKGROUND

Prior to filing for bankruptcy, Gordon Sel–Way, Inc. (Sel–Way) was in the business of excavating. In the 1980s, Sel–Way worked as a subcontractor on a project to update the Ann Arbor Waste Water Treatment Plant (the Ann Arbor project). Due to the existence of hazardous waste on the site, which Sel–Way thought would be removed by other contractors before it began its work, Sel–Way incurred substantial unanticipated losses and expenses in removing the toxic waste. Based in large part on its inability to pay its creditors of the Ann Arbor project, and also on the failure of another contractor to pay Sel–Way its retainer in an unrelated project, Sel–Way filed a voluntary Chapter 11 petition for reorganization on July 1, 1988. Sel–Way continued to do business for about six months after filing the petition, but ultimately liquidated the business. For the years surrounding the filing of the petition, 1987, 1988, 1989 and 1990, Sel–Way failed to deposit, pay or file tax returns relating to federal employment (FUTA) taxes. Arising out of this failure, the Internal Revenue Service (IRS) acquired an unsecured claim for unemployment tax penalties in the amount of $482,-931.42.

As part of the reorganization, which was confirmed by the bankruptcy court on October 25, 1991, the government's $482,-931.42 unsecured claim for prepetition unemployment tax penalties was treated as a Class 5 claim and grouped with the claims of other unsecured creditors. According to the terms of the reorganization Plan, Class 5 claimants were deemed entitled to share equally in the pro rata surplus of

proceeds existing after Classes 1 through 3 were paid. Ultimately, all Class 5 creditors, except the government, received a dividend of 20% on their unsecured claims.

Throughout this litigation, Sel–Way has vigorously disputed the government's entitlement to prepetition unemployment tax penalties. In the bankruptcy proceedings below, Sel–Way argued that the claim could be equitably subordinated. On December 14, 1995, the bankruptcy court discharged Sel–Way's debt to the government for prepetition unemployment taxes on the grounds that the government's general unsecured claim could be equitably subordinated pursuant to the Sixth Circuit's opinion in *In re First Truck Lines*, 48 F.3d 210 (6th Cir.1995). The government appealed that opinion to the district court on December 22, 1995. While on appeal, the Supreme Court issued its opinion in *United States v. Noland*, 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996) overruling the Sixth Circuit's opinion in *In re First Truck Lines, supra*. Based on the Supreme Court's opinion, the district court remanded the matter to the bankruptcy court for reconsideration on July 7, 1996. On remand, the bankruptcy court found no equitable subordination existed and the government was entitled to collect its unsecured claim in an order dated January 22, 1997. The district court then affirmed on October 28, 1997.

Although there is no longer any question that Sel–Way must pay the government its unsecured claim, the same as all other Class 5 creditors, Sel–Way no longer has the funds to do so because it paid all its remaining proceeds to the other Class 5 creditors while litigating its obligation to pay its debt to the government. The only funds now available to Sel–Way are funds from a government refund for the overpayment of FUTA unemployment taxes, which occurred after the bankruptcy petition was filed and confirmed. The bankruptcy

court denied the government's motion for a setoff on the grounds that the refund arose postpetition but Sel–Way's debt to the government arose prepetition. Thus, the bankruptcy court held that the required mutuality of obligation was lacking as purportedly required pursuant to 11 U.S.C. § 553(a) for a setoff to occur. Section 553(a) provides:

> Except as otherwise provided in this section and in section 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case.

Specifically, the FUTA overpayment arose on September 31, 1992, when Sel–Way paid its Michigan unemployment taxes for the 1987 and 1989 tax years.[1] 26 U.S.C. § 3302(a) allows an employer to receive a refund against FUTA taxes for certain amounts paid into state unemployment funds. The overpayments for 1987 and 1989 both occurred after the bankruptcy petition was filed. After receiving significant funds from an arbitration award from the general contractor in the Ann Arbor project, Sel–Way paid its employment taxes for 1989 on September 13, 1990, which was after the petition was filed but before Plan confirmation. Sel–Way paid its federal unemployment taxes for 1987 on November 5, 1991, after confirmation of its reorganization Plan. On December 23, 1993, over two years after the bankruptcy reorganization Plan was confirmed, Sel–Way filed an adversary proceeding complaint in the bankruptcy court seeking the FUTA tax refund. On August 17, 1994, the bankruptcy court ruled that Sel–Way was entitled to a tax refund for 1987 in the amount of $54,538 and a tax refund for 1989 in the amount of $35,700.

1. Sel–Way also sought a refund for 1988 unemployment tax overpayments but the bankruptcy court disallowed the claim on the grounds that it was barred by the statute-of-limitations.

The bankruptcy court, however, did not order payment of the refund immediately, finding that the government had preserved its right to assert its claim for an offset against the prepetition unemployment tax penalties. On September 11, 1998, the bankruptcy court denied the government's setoff defense on the grounds that the refund did not amount to a "mutual" debt because it arose postpetition. This appeal arises out of the bankruptcy court's September 11, 1998 decision. To date, the government has not paid the FUTA tax refund. Although Sel–Way filed a motion to compel payment of the FUTA tax refund, the bankruptcy court took that motion under advisement.

The parties agree that if the bankruptcy court's opinion denying the government's setoff defense is affirmed, monies from the FUTA tax refund will be used to pay administrative expenses first, which includes $50,000 in attorney fees, and $30,000 in accounting fees, leaving only about $10,000 to pay the government's unsecured claim, which amounts to a dividend of about 2.5%. If, however, the government had been paid in the first instance its pro rata share of the proceeds, as required by the reorganization Plan, the government contends it would have received $96,586. Should this court recognize the setoff, the government will receive its 20% share of its unsecured claim, just as other Class 5 claimants did, and the lawyers and accountants will be left with nothing in the estate to pay their administrative expenses. In other words, as both sides have framed this appeal, the court must decide whether the FUTA tax refund will be used to pay the lawyers and accountants for their work, some of which was spent litigating whether the government was entitled to collect its unsecured claim for unemployment tax penalties at all, or whether the money should go to the government to pay the tax penalty. On appeal, the government not only challenges the denial of its setoff claim, but argues for the first time that the bankruptcy court lacked jurisdiction to award the FUTA tax refund to Sel–Way in the first place.[2]

At the government's request, oral argument was heard on July 12, 1999. At that time, the government cited to numerous cases not mentioned in its initial filings. The court allowed the government to file a supplemental brief and Sel–Way to file a supplemental response. The parties now have submitted their supplemental responses and the court has carefully considered them.

## JURISDICTION

■ Jurisdiction may be challenged for the first time on appeal. *Franzel v. Kerr Mfg.*, 959 F.2d 628, 630 (6th Cir.1992). Although the government initially challenged the bankruptcy court's jurisdiction to hear Sel–Way's claim for a tax refund on the grounds that Sel–Way's claim was time-barred, it later amended its answer to abandon the jurisdictional issue.[3] In order

**2.** In response to the government's appeal, Sel–Way argues that the government may have violated the automatic stay when these proceedings were pending below by allegedly unilaterally creating a setoff for a refund purportedly owing to Sel–Way based on overpayment of certain highway taxes. Sel–Way admits that it never raised the issue when this matter was pending in the bankruptcy court below. "The well-established rule in the Sixth Circuit is that an appellate court will not consider arguments or issues raised for the first time on appeal unless these are exceptional circumstances. Such exceptional circumstances [exist] where either the proper decision is beyond doubt or a miscarriage of justice might otherwise result." *In re Law-*

*rence,* 219 B.R. 786, 802 (E.D.Tenn.1998). Having failed to establish that exceptional circumstances exist here, this court, sitting on appeal, will not address the matter.

**3.** The basis for the bankruptcy court's exercise of jurisdiction is not entirely clear. In its June 24, 1994 order addressing only Sel–Way's claim for a refund for 1988 overpayments, the parties having agreed that a refund was due for 1987 and 1989, the court stated, "[b]ecause the Plaintiff's bankruptcy is still pending, the refund action, in the form of an adversary proceeding, was brought in the Bankruptcy Court under 11 U.S.C. § 505(a)(2)(B)." It appears that the bank-

for jurisdiction to exist, the tax refund must constitute a "core proceeding" which would confer unfettered jurisdiction on the bankruptcy court pursuant to 28 U.S.C. § 157(b), or it must "relate to" the Chapter 11 proceeding such that ancillary jurisdiction exists pursuant to 28 U.S.C. § 157(c). In the case of "relate to" jurisdiction, the bankruptcy court is authorized only to issue proposed findings of fact and conclusions of law for the district's court's review, much like a magistrate judge does when the district court refers matters for a report and recommendation.

In this case, Sel–Way argues that the bankruptcy court had full jurisdiction because its tax refund claim was a "core proceeding," or at least ancillary jurisdiction because the refund was essential to consummation of the Plan. The government, on the other hand, argues that the refund action did not constitute a "core proceeding" because the debtor's entitlement to a refund did not arise until after confirmation of the Plan. The government also contends that "relate to" jurisdiction did not exist because the estate dissolved at the time of confirmation and the estate is the only party authorized to seek a tax refund under the Bankruptcy Code. Once

the bankrupt estate ceases to exist, which happens upon confirmation of a reorganization Plan, the government contends that the debtor-in-possession must bring a tax refund action in the district court or the Court of Federal Claims, just as any other taxpayer must do to process a refund claim. In the alternative, the government argues that if jurisdiction exists at all, it is only the ancillary jurisdiction provided for under § 157(c). Having carefully considered this matter and for the reasons explained below, the court finds that Sel–Way's request for a tax refund amounted to a "core proceeding" under § 157(b)(2) and the bankruptcy court properly exercised jurisdiction over Sel–Way's FUTA refund claim.

1. *"Core Proceeding" Jurisdiction pursuant to 28 U.S.C. § 157(b).*

■ Section 157(b)(1) confers jurisdiction on bankruptcy judges to hear all "core proceedings" arising under Title 11. The Bankruptcy Code sets forth a non-exclusive list of core proceedings,[4] which includes proceedings affecting liquidation of the estate's assets or adjustment of the debtor-creditor relationship. 28 U.S.C.

---

ruptcy court treated the refund claim as a core proceeding.

4. 28 U.S.C. § 157(b)(2) provides:
Core proceedings include, but are not limited to—
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

§ 157(b)(2)(*O*). In a similar case, *In re Kreidle*, 143 B.R. 941 (D.Colo.1992), the bankruptcy court found that a debtor's adversary proceeding challenging the government's claim for tax liabilities arising two years after the Chapter 11 reorganization plan was confirmed amounted to a "core proceeding" conferring jurisdiction on the bankruptcy court. The court explained:

> Assessment and collection of a tax liability that relates to a pre-petition or pre-confirmation tax year will affect the validity of the Plan's confirmation, and therefore the issue is core.

*Id.* at 945 (citation omitted).

Similarly, in this case, Sel–Way argues that the FUTA refund will be used to make payments under the reorganization Plan. Although the FUTA refund arose postpetition, the refund is for an overpayment of tax liabilities that arose prepetition. The government's argument that the bankruptcy court lacked jurisdiction and that a district court or the Court of Federal Claims should have decided whether Sel–Way was entitled to the FUTA refund lacks merit. If this court were to so hold, the decision would be setting a poorly reasoned and impractical precedent for future cases. 11 U.S.C. § 505 clearly gives the bankruptcy court authority to decide tax refund issues arising in a bankruptcy proceeding. It would be judicially inefficient to have a district court or the Court of Federal Claims deciding a refund issue which is central to a bankruptcy reorganization plan.

In order for jurisdiction to exist under § 157 after a plan has been confirmed, 11 U.S.C. § 1142 requires that the relief sought is "necessary for the consummation of the plan." Because the FUTA refund is necessary for Sel–Way to fund its reorganization Plan, the court finds the requirement of § 1142 has been met and jurisdiction exists.

The government argues that only the bankruptcy estate may bring a refund action under 11 U.S.C. § 505 in bankruptcy court. Section 505(a)(2)(B) expressly grants the bankruptcy court the ability to hear a claim "of the estate to a tax refund" provided that certain timing conditions are met. In this case, the government argues that the bankruptcy court erred in hearing Sel–Way's refund claim pursuant to § 505(a)(2)(B) because, upon confirmation of the Plan, the estate ceases to exist; thus, Sel–Way is the debtor-in-possession and lacks standing to file a refund action in bankruptcy court. The government contends that § 505(a)(2)(B) constitutes a limited waiver of the government's sovereign immunity only for refund actions filed by the "estate" when certain conditions are met, and does not constitute a waiver of sovereign immunity where a reformed debtor seeks a tax refund.

In support of this argument, the government cites *Department of the Army v. Blue Fox*, 525 U.S. 255, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999) which reaffirmed the longstanding rule, wholly inapplicable here, that sovereign immunity leaves a subcontractor without a remedy against the government when a general contractor becomes insolvent. *Id.*, 119 S.Ct. at 692. In *Blue Fox*, the Court stressed that Congressional waivers of sovereign immunity must be strictly construed in favor of the government. *Id.*, 119 S.Ct. at 691. Applying that principle to the Administrative Procedures Act, 5 U.S.C. § 702, which waives sovereign immunity for review of agency action when "relief other than money damages" is sought, the Court held that a subcontractor's claim for a "lien" was really one for money damages, and thus, was barred by the doctrine of sovereign immunity. *Id.*, 119 S.Ct. at 692. Although *Blue Fox* appears to have nothing in common with the instant dispute, the government contends that the general principle stated there, that waivers of sovereign immunity must be strictly construed in favor of the sovereign, barred the bankruptcy court below from hearing Sel–Way's refund claim. Because § 505(a)(2)(B) refers to refund actions of the "estate," and Sel–

Way was technically the "debtor-in-possession" at the time its refund claim was filed, the government alleges there was no waiver of sovereign immunity which would permit the bankruptcy court to hear Sel–Way's claim. In this case, however, there is no dispute that Sel–Way intends to use the tax refund as proceeds of the estate to fulfill its Plan obligations; thus, the government's point is meaningless.

This court agrees with Sel–Way that the government has given an overly constrained interpretation to § 505 which other courts have not adopted. *See, e.g. Kreidle, supra.* Similarly, in *In re Patriot Illinois Corp.,* 181 B.R. 56 (Bankr.C.D.Ill. 1994) and *In re Churchfield Mgt. & Invest. Corp.,* 122 B.R. 76 (Bankr.N.D.Ill.1990), the bankruptcy court allowed successors-in-interest or assignees to bring actions under §§ 544, 547 and 548, which only waive the government's sovereign immunity as to suits brought by "trustees."

The government's argument that Sel–Way was required to file its tax refund claim in a district court or the Court of Federal Claims, and not in the bankruptcy court which was administering Sel–Way's reorganization Plan, does not make sense. At the time Sel–Way filed its refund claim in the bankruptcy court, Sel–Way had not completed the winding-up process, expenses continued to accrue, and claims remained unpaid. There is no dispute that the FUTA refund, whose validity the government does not challenge, will be used by the debtor-in-possession to discharge Plan obligations. Where there is no question that the tax refund will and must be used in accordance with the Plan of reorganization to pay debts of the bankruptcy estate, it is merely semantic gamesmanship to say that the bankruptcy court lacked power to hear the action under § 505 because Plan confirmation had occurred before the refund action was filed, and thus, the estate no longer technically existed. This court must decline the government's invitation to apply such a technical and nonsensical meaning to § 505.

■ The government also contends that the Tax Anti–Injunction Act prevented the bankruptcy court from hearing Sel–Ways claim for a refund. That Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any Court." The government contends, with voluminous case support, that the Anti–Injunction Act protects the government's revenue collection process from interference. That Act is inapplicable to Sel–Way's tax refund claim at issue here. In this case, the government never contested Sel–Way's right to a tax refund, only the amount of the refund owing. In this situation, it is difficult to imagine how the refund claim for an undisputed tax overpayment could implicate the Anti–Injunction Act.

Finally, the government argues that Sel–Way should have filed its tax refund claim in the district court of the Court of Federal Claims and had one of those courts determine its setoff defense. This would require a non-bankruptcy court to revisit the issue of bankruptcy debts and obligations previously addressed by the bankruptcy court in confirming the Plan of liquidation and reorganization. Such wasteful redundancy of judicial resources should be avoided. Such an outcome would unnecessarily burden another federal court with matters which the bankruptcy court was already intimately involved in adjudicating. The government's setoff defense involves its unsecured claim for which the bankruptcy court was well-informed, having specifically addressed the claim not only as part of Sel–Way's reorganization Plan, but as part of Sel–Way's efforts to subordinate the claim, which involved at least two opinions of the bankruptcy court and two appeals to the district court.

Moreover, in this case, Sel–Way's Plan of reorganization provides a retention of jurisdiction clause which states, the "Court shall retain jurisdiction to hear and deter-

mine any controversy pending as of the date of confirmation before this court." (R. at 47). The government contends that this clause does not confer jurisdiction on the bankruptcy court to decide Sel–Way's claim for a tax refund because Sel–Way's entitlement to a refund did not arise until the overpayments were made, which occurred in September, 1992, over a year after the Plan was confirmed. Although the government is correct that Sel–Way's entitlement to a refund did not technically arise until the overpayments were made, Sel–Way's tax liability for 1987 and 1989 existed prior to the filing of the bankruptcy petition in 1990, and it is the existence of the tax liability itself which forms the basis for the controversy and the benchmark for measuring if overpayments were made.

In this way, Sel–Way's reliance on *In re Patriot Illinois Corp.,* supra, and *In re Churchfield Mgt. & Invest. Corp.,* supra, is apropos. In both cases, the bankruptcy court exercised jurisdiction over actions brought by successors-in-interest to the trustee, which were filed after plan confirmation, to challenge alleged preferences or fraudulent conveyances. In both cases, the bankruptcy court found the litigation amounted to a "core proceeding" because the reorganization plans in those cases, as in this one, allowed for retention of existing claims at the time of plan confirmation. In this case, although the refund claim did not exist prior to the Plan confirmation, the tax liability existed and the overpayment was made from proceeds which should have been used in accordance with the terms of the Plan to pay other creditors. In addition, the parties agree that the proceeds of any refund action were to be used to consummate Sel–Way's Plan of reorganization, whether the "estate" tech-

nically ceased on the date of confirmation or not. Under these circumstances, Sel–Way's refund claim constituted a "core proceeding" for which the bankruptcy court properly exercised jurisdiction pursuant to § 157(b).

2. *Ancillary Jurisdiction pursuant to § 157(c)(1).*

■ Even if the refund action did not constitute a "core proceeding" under Chapter 11, the bankruptcy court still had jurisdiction to hear Sel–Way's claim under § 157(c). Section 157(c) provides the bankruptcy court with jurisdiction to hear matters which are "related to" the underlying bankruptcy petition. Under § 157(c), the bankruptcy court is authorized to issue proposed findings of fact and conclusions of law for the district court to review *de novo.*

### STANDARD OF REVIEW

■ In the Sixth Circuit, the law is well-established that on appeal, findings of fact by the bankruptcy court are reviewed under the clearly erroneous standard and conclusions of law are reviewed *de novo. In re Isaacman,* 26 F.3d 629, 631 (6th Cir.1994). If jurisdiction is pursuant to 28 U.S.C. § 157(c), then the bankruptcy court could only issue proposed findings of fact and conclusions of law for the district court, in which case, this court reviews both findings of fact and conclusions of law under the *de novo* standard. 28 U.S.C. § 157(c)(1).[5] Because the allowance or denial of a setoff is a matter of equity, and any right to setoff is permissive and not mandatory, the bankruptcy court's decision to grant or deny a setoff is reviewed under the abuse of discretion standard. *In re The Bennett Funding Group, Inc.,* 146 F.3d 136, 140 (2d Cir.1998); *In re The*

---

**5.** 28 U.S.C. § 157(c)(1) provides:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and

any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

*Securities Group 1980,* 74 F.3d 1103, 1114 (11th Cir.1996); *Newbery Corp. v. Fireman's Fund Ins. Co.,* 95 F.3d 1392, 1399 (9th Cir.1996) (citing *In re Cascade Roads, Inc.,* 34 F.3d 756, 763 (9th Cir.1994)).

### ANALYSIS

Having found that the bankruptcy court properly exercised its jurisdiction in hearing Sel–Way's request for a FUTA tax refund, this court now turns its attention to the crux of the parties' dispute on appeal: whether the bankruptcy court erred in denying the government's request to offset the FUTA refund against tax penalties due and classified as a Class 5 claim under the debtor's Plan of reorganization. For the three reasons explained below, the government is entitled to offset the FUTA overpayments it owes to Sel–Way by its unsecured claim for unemployment tax penalties. Accordingly, the bankruptcy court's opinion to the contrary must be reversed.

### A. *Right to Setoff Derives from Common Law*

The government contends that it is entitled to offset the refund for FUTA unemployment tax overpayments it owes to Sel–Way, in the amount of approximately $90,-000, by the amount Sel–Way owes to the government on its Class 5 claim for unemployment tax penalties in the amount of about $96,586, which represents a 20% dividend on its prepetition claim in the amount of $482,931.

In the bankruptcy court's opinion denying the government's request for a setoff, which is the subject of this appeal, the bankruptcy court ruled that the setoff was not permitted under § 553(a) of Title 11. The bankruptcy court ruled that § 553(a) did not permit the offset because the government's debt to Sel–Way, that is the tax refund owing for FUTA unemployment taxes, arose postpetition, whereas Sel–Way's debt to the government for unemployment tax penalties arose before the bankruptcy petition was filed. Finding

that there was no mutuality of prepetition debts as required for an offset under § 553(a) to arise, the bankruptcy court denied the government's offset defense. In this case, the government contends that § 553(a) does not apply because the setoff sought involves mutual postpetition, not prepetition, debts. The government contends that § 553(a) is a narrowly tailored safe harbor provision intended to clarify that other provisions of the Bankruptcy Code do not eradicate the common law right to a setoff for mutual prepetition debts. Sel–Way, on the other hand, argues that in bankruptcy, the right to setoff derives solely from § 553(a), and those conditions not having been met here, no right to setoff exists.

This court agrees with the government that § 553(a) merely preserves, by statute, the common law right to offset mutual debts, in the face of other statutory provisions which might arguably take away those rights. The United States Supreme Court has recognized that the Bankruptcy Code does not displace the common law right to setoff, and whatever right to setoff exists under the common law is preserved in bankruptcy. *Citizen's Bank of Maryland v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). "The right of setoff (also called offset) allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' " *Id.* at 18, 116 S.Ct. 286. "Section 553(a) of Title 11 of the United States Code does not create a right to setoff, but rather preserves whatever right exists under applicable non-bankruptcy law." *The Bennett Funding Group,* 146 F.3d at 138. A leading treatise on bankruptcy law also recognizes the common law right to setoff mutual postpetition debts. 8 *Collier on Bankruptcy,* ¶ 553.03[6] (15th Ed.1999). Section 553(a) merely addresses prepetition debts and is silent as to offset for mutual postpetition debts. *See In re Seal,* 192 B.R. 442, 457 (Bankr. W.D.Mich.1996); *In re Fordson En'g,* 25

B.R. 506, 511 (Bankr.E.D.Mich.1982). Nothing about the Bankruptcy Code abrogates the common law right to setoff; thus, bankruptcy courts have recognized the right to setoff for postpetition debts. *See United States v. Maxwell,* 157 F.3d 1099, 1102 (7th Cir.1998); *Palm Beach County Bd. of Pub. Instruction v. Alfar Dairy, Inc.,* 458 F.2d 1258, 1262 (5th Cir.), *cert. denied,* 409 U.S. 1048, 93 S.Ct. 517, 34 L.Ed.2d 501 (1972); *Fordson,* 25 B.R. at 511; *In re JAG, Inc.,* 7 B.R. 624, 628 (Bank.D.Mass.1980).

B. *Mutuality of Debt Exists Such that Setoff Should Be Allowed*

 In the case of *In re Seal, supra,* the bankruptcy court allowed a setoff for mutual postpetition debts in a case involving facts analogous to those presented here. In that case, the debtor owed the lien holder of a vehicle approximately $2,100 under a Chapter 13 Plan. Conversely, the lien holder owed the debtor approximately $2,900 in court awarded sanctions for failing to turn over the vehicle title in contravention of court orders. The court allowed the debtor to offset his debt to the creditor under the reorganization plan based on the sanctions the creditor owed to the debtor, on the grounds that both involved postpetition debts. Although the debtor's obligation to the creditor arose before the bankruptcy petition was filed, the court held it was transformed into a postpetition obligation once it became part of the debtor's confirmed reorganization plan in bankruptcy. *In re Seal,* 192 B.R. at 457. The court explained that where the reorganization plan does not discharge a prepetition claim, the prepetition claim survives confirmation. Thus, the court found that mutuality existed because both debts involved postpetition obligations. In that case, the court established three elements for setoff based on postpetition debts: (1) mutual obligations, (2) arising from separate transactions, and (3) both accrued postpetition. *Id.* As in *In re Seal,* those three elements

are met in this case; thus, setoff should have been allowed.

Although it is true that the government's unsecured claim for unemployment tax penalties in the amount of $482,931 arose before the bankruptcy petition was filed, it became a postpetition obligation when the Plan of reorganization did not discharge the debt, but grouped it with the claims of other Class 5 claimants. Under the Plan of reorganization, the government is entitled to a 20% dividend on its claim, which amounts to $96,586. Because $96,586 of the government's prepetition claim survived Plan confirmation, that debt was transformed into a postpetition obligation.

In terms of mutuality of obligation, there is no dispute that the FUTA refund due and owing arose on September 31, 1992, the date that Sel–Way paid its Michigan unemployment taxes, over a year after the Plan of reorganization was confirmed, which occurred on October 25, 1991. Thus, both debts upon which the government's request for a setoff are based involve postpetition obligations. The debts are mutual in that Sel–Way owes a postpetition debt to the IRS and the IRS owes a postpetition debt to Sel–Way. The only element remaining to satisfy the three-part test set forth in *In re Seal, supra,* is that the debts arise from separate, as opposed to the same, transaction. This factor is easily met and is not disputed.

Sel–Way argues that the reasoning of *In re Seal* does not apply to this case because that case involved the doctrine of recoupment, not setoff, and to the extent the court's opinion referred to the doctrine of setoff by name, it was a misnomer. Sel–Way's argument is not convincing. The parties agree that recoupment, unlike setoff, involves debts arising out of the same transaction. The debts in *In re Seal* did not arise out of the same transaction. The debtor owed the creditor payments for a vehicle which first accrued before the bankruptcy petition was ever filed. The creditor, on the other hand, owed the debtor court imposed sanctions. Clearly, these

events, which were separated by years, did not involve the same transaction. Recoupment involves the right of a defendant to reduce the amount of a claim and does not involve independent obligations. 8 *Collier on Bankruptcy,* ¶ 553.10 (15th Ed.1999). Recoupment has been analogized to both compulsory counterclaims and affirmative defenses. *In re Newbery Corp.,* 95 F.3d at 1399. An example of recoupment would be where A defends a suit brought by B for money owing on a construction contract by counter-claiming that B failed to comply with A's specifications. *See In re B & L Oil Co.,* 782 F.2d 155, 157 (10th Cir.1986). Recoupment is not at issue in this case, nor was it the basis for the court's holding in *In re Seal.*

Sel–Way relies on *In re Braniff Airways, Inc.,* 42 B.R. 443 (Bankr.N.D.Tex. 1984) in support of its argument that setoff should be barred here because mutuality of obligation is lacking. In that case, the debtor airline sought to offset its prepetition claim against the government for unpaid airline tickets against its payroll tax liabilities which arose after the petition was filed. The bankruptcy court denied the setoff on the grounds that the debtor-in-possession could not offset its tax liabilities on the basis of a claim owed to the debtor by the government because the debtor and debtor-in-possession are two distinct entities. *Id.* at 451–52. In reaching its conclusion, the court explained that the equitable right to setoff conflicts with the fundamental principle of bankruptcy law that distributions among like creditors should be equal. *Id.* at 448. Given this conflict, mutuality of obligation is an important prerequisite for setoff. Because setoff usually allows a creditor to collect a greater portion of its claim than it would otherwise have received, in other words, the creditor receives a priority over other like creditors, mutuality ensures that the favorable treatment a creditor receives when a setoff is permitted is equitable. Unless setoff is allowed, the creditor will be forced to pay in full an obligation to the debtor while settling for only a pro rata

recovery of its claim against the debtor. To avoid this unjust result which unfairly penalizes an innocent party, the right to setoff has been recognized in bankruptcy, although the result usually conflicts with the policy of equal distribution among creditors.

This case, however, presents the unusual scenario where even if the court allows the setoff, the government will receive no better treatment than any other unsecured creditor. The government is not seeking to use setoff to receive full satisfaction of its unsecured debt. In fact, the government admits that it is not entitled to such an offset because its tax liability claim against Sel–Way has been grouped with the claims of other Class 5 creditors and under the Plan, the government is only entitled to a pro rata share of the remaining proceeds after secured claims are paid. All of the other Class 5 creditors have received their pro rata share and there are no longer enough funds to pay the government its pro rata share. Of the government's original unsecured claim in the amount of $482.931.42, the government seeks to recover only $96,586 of that amount, which is the amount the government claims it would have received had Sel–Way paid it in accordance with the Plan as it did all other unsecured creditors. In this situation, setoff fulfills the policy of equality of distribution among creditors.

In opposition to the government's appeal, Sel–Way also relies heavily on two unrelated cases: *United States v. Norton,* 717 F.2d 767 (3d Cir.1983) and *United States v. Reynolds,* 764 F.2d 1004 (4th Cir.1985). Sel–Way characterizes those cases as holding that the government was not entitled to offset prepetition tax liabilities against the debtors' postpetition refund claims for lack of mutuality. Sel–Way has misconstrued those cases. Unlike the instant matter, neither case involved setting off a postpetition refund against an unpaid plan payment. Instead,

both cases involved denying a setoff where the plan adequately addressed the government's claim and the refund arose postpetition.

In *Norton*, the court denied the setoff sought by the government because the government's claim was being paid in full in monthly payments spread out over three years and none of the payments were overdue nor was default threatened. In *Norton*, unlike this case, the government sought a setoff to have its claim paid in full rather than in installment payments as provided for under the plan, in order to improve on its position under the debtors' Chapter 13 Plan. Unlike *Norton*, in this case, the government has not received one dime of the $96,586 due under the Plan, and default on the postpetition debt appears imminent unless the setoff is permitted.

Similarly, *Reynolds, supra,* is equally inapplicable. In that case, like *Norton*, the court denied the setoff sought because the IRS was adequately protected through payments from the Chapter 13 trustee. *Id.* at 1007. The Fourth Circuit found that the IRS was "assured of payment in full" for its prepetition tax claim, a scenario quite at odds with the circumstances presented here. In this case, Sel–Way does not dispute that if the setoff is not allowed, the government will not be paid sums due under the Chapter 11 Plan. Instead, Sel–Way argues that if the setoff is allowed, there will not be enough left in the pot, apparently due to Sel–Way's own lack of foresight, to pay administrative expenses of the estate. In essence, Sel–Way admits that the government will not be paid its debt, despite the fact that the IRS is entitled to collect on its claim under the Plan. This is a crucial distinction from *Norton* and *Reynolds*, which renders those decisions inapplicable as precedents in this matter. In this case, there is mutuality between the obligation of the IRS to refund certain FUTA overpayments and Sel–Way's obligation to pay the IRS its unsecured claim in the same way that other Class 5 creditors have been paid.

Just as Sel–Way's reliance on *Norton* and *Reynolds* is misplaced, its reliance on *United States v. Continental Airlines*, 134 F.3d 536 (3d Cir.1998) also is unavailing. Unlike the situation in *Continental Airlines*, here the government does not seek to use its right to set-off to obtain a preference over other unsecured creditors. Rather, the government seeks to use the right to set-off to ensure that it, like other Class 5 creditors, is paid its pro rata share under the Plan. Were the government seeking to improve on its status through set-off in circumvention of the Plan, Sel–Way's argument would indeed be convincing. But that is simply not the case here.

### C. *Equities Favor Recognizing Setoff*

 Both sides have argued extensively that equity requires a ruling in their favor. Of the many class 5 creditors, the government argues that it is unfair to require it alone to fund the bankruptcy estate's administrative expenses. Bankruptcy law is clear that equal members of a class should fund administrative expenses on a pro rata basis, and one member of a class should not bear a disproportionate burden. *In re Anolik*, 207 B.R. 34, 40 (Bankr.Mass.1997). Unless the setoff is allowed, the FUTA refund will go to pay the estate's administrative expenses and nothing will be left to pay the government's Class 5 claim. This is so because Sel–Way paid all of the Class 5 claimants, with the exception of the government, the remaining proceeds of the estate, saving no funds, apart from the FUTA refund now due, to pay the government its debt. Unless a setoff is allowed, the FUTA refund will be used pay administrative expenses first, namely attorney and accountant fees, under the ordinary priority rules in effect, which will leave only about $10,000 to pay the IRS. Had the IRS received its pro rata share of the remainder, along with the other Class 5 claimants, however, it would have received $96,586.

The only seeming explanation for Sel–Way's refusal to pay the IRS its Class 5 claim in accordance with the terms of its reorganization Plan, is that Sel–Way relied to its detriment on an erroneous ruling of the bankruptcy court, discharging the IRS's unsecured claim for unemployment tax penalties, which was later reversed. The government argues that it is the lawyers and accountants who are responsible for Sel–Way's detrimental reliance on the incorrectly assumed success of their opposition to the government's appeal and for Sel–Way's failure to set up an adequate reserve to pay administrative expenses. Accordingly, the government contends it is these professionals, not the government, who should bear the burden of their poor advice and planning.

Sel–Way responds that the government already has fared extremely well under the Plan of reorganization, receiving 100% of its prepetition priority claims, which amounted to over a $1 million, $170,108 in postpetition late filing penalties, and over $175,000 in postpetition interest. Sel–Way contends that the government should move for disgorgement from the other Class 5 creditors instead of attempting to have its unsecured claim displace administrative expenses. The government responds that there is no statutory authority, nor authority in the reorganization Plan itself, which would allow the government, acting as creditor, to challenge postpetition transfers. The government contends that while the Plan does not grant a single creditor authority to pursue litigation against other creditors, Sel–Way could have brought a disgorgement action under the Plan and bankruptcy law. 11 U.S.C. § 1123(b)(3)(B). The government further contends that the fact that it was paid its secured claims is irrelevant to its appeal here which seeks equal treatment as other Class 5 creditors, treatment to which it is statutorily entitled pursuant to 11 U.S.C. § 1123(a)(4).

Having carefully considered the equity arguments of both sides, the scales tip heavily in favor of the government. There is no reason why the government should be forced to try to collect its claim, which was confirmed as part of the reorganization Plan, from other creditors who received proper payment under the Plan, rather than from the debtor-in-possession. Sel–Way's claim that the government should not be allowed to use the common law right of setoff to elevate its unsecured claim over payment of administrative expenses misses the mark. The government does not seek to invoke the doctrine of setoff to displace the ordinary priority rules, but only to ensure that Sel–Way does not default on its Plan obligations. The government seeks a setoff merely to ensure that the only funds left will be used to pay its pro rata share of its claim, in the same way that other unsecured creditors were paid. In other words, the government seeks a setoff not to alter priorities, but merely to ensure that it will be paid the portion of its unsecured claim which was preserved by the Plan. Had Sel–Way already complied with the Plan and paid the IRS its pro rata portion of its claim, or could Sel–Way assure the court that it could and would pay the government in accordance with the Plan, then as in *Reynolds* and *Norton, supra,* no setoff would be appropriate.

The fact that the government was paid on its secured claims is irrelevant to the instant dispute which involves the government's fight to be treated the same as other Class 5 creditors. It is Sel–Way itself that is to blame for its failure to create a reserve to pay administrative expenses and for its failure to pay the IRS monies owing under the Plan of liquidation and reorganization. If the setoff is not recognized, Sel–Way will have accomplished unilaterally, through its own failure to pay the government its due under the Plan, what it failed to do in the bankruptcy court below or in two prior appeals to this court: discharge the government's unsecured claim for unemployment tax penalties. The bankruptcy court and the dis-

trict court having previously held that the government is entitled to be paid its pro rata share of its Class 5 unsecured claim, it would be grossly unfair to now deny the government a setoff, which given Sel–Way's exhaustion of all other proceeds of the estate, would amount to a discharge of Sel–Way's debt. Taking these equities into consideration, fairness dictates that the government be allowed the setoff sought.

## CONCLUSION

For the reasons stated above, the bankruptcy court erred when it denied the government's claim for a setoff. Accordingly, the bankruptcy court's opinion hereby is REVERSED and this matter is REMANDED so that the setoff can be ordered in accordance with this opinion.