

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-25-2002

# USA v. Smiley

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3226

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Smiley" (2002). *2002 Decisions*. Paper 439.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/439

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 01-3226

UNITED STATES OF AMERICA

v.

KEITH SMILEY,
Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 99-cr-00060)
District Judge:  Hon. Stephen M. Orlofsky

Submitted Under Third Circuit LAR 34.1(a)
July 22, 2002

Before:  SLOVITER, NYGAARD, and BARRY, Circuit Judges

(Filed: July 25, 2002)

OPINION OF THE COURT SLOVITER, Circuit Judge.

Keith Smiley appeals the judgment of sentence.  After indictment in the United States District Court for the District of New Jersey, Smiley pleaded guilty to one count of conspiracy to distribute and to possess with intent to distribute more than five kilograms of cocaine, contrary to 21 U.S.C.  841(a)(1), in violation of 21 U.S.C.  846.  The District Court sentenced Smiley to 240 months imprisonment.

In this appeal, Smiley challenges the District Court's finding that he played a managerial role pursuant to U.S.S.G.  3B1.1(b), its calculation of drug amount, its finding that Smiley obstructed the administration of justice under U.S.S.G.  3C1.1, its finding that Smiley possessed a weapon warranting enhancement under U.S.S.G.  2D1.1(b)(1), its determination that Smiley was involved in the charged conspiracy while he was still on probation under  4A1.1(d) and committed the instant offense within five years of a juvenile conviction under U.S.S.G.  4A1.2(d)(2)(B), and its holding that 21 U.S.C.  841 is not unconstitutional on its face or as applied.  We will affirm.

The District Court had jurisdiction under 18 U.S.C.  3231.  This court has jurisdiction pursuant to 28 U.S.C.  1291 and 18 U.S.C.  3742.  As part of his plea agreement, Smiley and the government stipulated that the 1998 edition of the Sentencing Guidelines apply.  We review "a district court's finding of fact supporting an upward adjustment to a sentencing level for clear error."  United States v. Bethancourt, 65 F.3d 1074, 1080 (3d Cir. 1995).  A district court does not commit clear error unless its factual findings are "completely devoid of a credible evidentiary basis or bear[] no rational relationship to the supporting data."  United States v. Haut, 107 F.3d 213, 218 (3d Cir. 1997) (quoting American Home Prods. Corp. v. Barr Labs, Inc., 834 F.2d 368, 371 (3d Cir. 1987)).

Because this is a non-precedential opinion, and the parties are aware of the facts, we will set forth only those facts essential to the issue discussed.

I.

We confront first Smiley's contention that the District Court erred in enhancing his sentence under U.S.S.G. 3B1.1(b) for his role as a manager or supervisor. Under 3B1.1(b), a sentencing court increases the offense level by 3 levels "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants." Smiley concedes "five or more participants were involved in the activity." Br. of Appellant at 9.

Accordingly, the sole inquiry is whether Smiley managed or supervised at least one other person. United States v. Katora, 981 F.2d 1398, 1402 (3d Cir. 1992) ("To apply section 3B1.1, a district court must find that the defendant exercised control over at least one other person."). Smiley contends he "did not control anyone involved in the criminal activity." Br. of Appellant at 11.

The government points out that Smiley's counsel stated at the sentencing hearing that "Mr. Smiley . . . used [Patrice] Dowe as a courier" for cocaine from the Belanchi organization. App. at 77. Derrick Johnson testified at Rajah Miller's trial that Dowe, Miller and Edwin Gardner would bring drugs back from New York on behalf of the conspiracy. Supp. App. at 61. According to Johnson, Miller would most frequently deliver cocaine to "[b]oth of the Smiley brothers [referring to Keith and Breon Smiley] and Gregory Knox." Supp. App. at 61. Gardner also testified that he traveled to New York to pick up cocaine from Belanchi for Keith Smiley and others in exchange for $50 per trip. Supp. App. at 4.

In United States v. Bethancourt, 65 F.3d 1074 (3d Cir. 1995), this court found a defendant had "supervised" a courier under 3B1.1 when the arrangement "did not involve splitting profits derived from the cocaine sale or selling the cocaine jointly," the defendant had "arranged for his contacts . . . to supply . . . [the courier with the] cocaine, and the defendant had arranged to pay the courier for his services. Id. at 1081; see also United States v. Fields, 39 F.3d 439, 447-48 (3d Cir. 1994) (finding no error in imposition of 3B1.1 based on evidence that "the defendant directed a young man or a boy, whom the defendant identified as his cousin, to deliver a package of heroin to an informant. . . . after this delivery was made, the defendant criticized the young man or boy for being too open in his manner of handing over the package"). Given the circumstances here, which involve supervisory relationships both more extensive and more developed than those in Bethancourt, we cannot conclude that the District Court clearly erred in concluding that Smiley exercised a supervisory role under 3B1.1. Although Smiley argues the District Court should have held an evidentiary hearing on that issue, he has failed to identify any point in the record at which he asked the District Court for an evidentiary hearing on his role under 3B1.1, and we cannot say the District Court abused its discretion in deciding not to hold one.

## II.

Smiley next argues that the District Court erred in sentencing him based upon a drug weight of fifteen to fifty kilograms of cocaine when that amount was not proven beyond a reasonable doubt. Smiley observes that under the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), factors mentioned in a statute that result in an enhancement beyond the prescribed statutory maximum must be proved beyond a reasonable doubt. Smiley urges that "the Supreme Court's holding in Apprendi requires the Government to allege and prove beyond a reasonable doubt drug quantity as elements of offenses under 21 U.S.C. 841." Br. of Appellant at 15.

This Court has rejected the argument that Apprendi applies in cases where the drug quantity determination does not result in a sentence beyond the statutory maximum. See, e.g., United States v. Boone, 279 F.3d 163, 186 n.16 (3d Cir. 2002) (observing that "the limitations of Apprendi do not apply unless the quantity calculation increases the statutory maximum the defendant is exposed to"). In this case, the government conceded at sentencing that, in light of Apprendi, because drug quantity was not established beyond a reasonable doubt at the time Smiley entered his guilty plea, the applicable maximum sentence was 240 months, the statutory maximum under 21 U.S.C. 841(b)(1)(C). The District Court agreed, and accordingly sentenced Smiley to 240 months, despite an applicable guideline range of 324 to 405 months. Because the District Court's drug quantity determination did not result in a sentence that exceeded the statutory maximum, Apprendi is not here at issue.

In the alternative, Smiley urges that the District Court erred in concluding Smiley was responsible for 15 to 50 kilograms of cocaine. He contends that the District Court

relied on untrustworthy evidence, and was overly liberal in its assessment of drug quantity.

The government points to considerable and consistent evidence supporting the District Court's determination. Edward Gardner, who eventually served as a confidential informant, reported to law enforcement agents that from July to September 1994, while "participating actively in the conspiracy, he transported approximately 8 ounces of cocaine [or 224 grams] per week from New York City to Atlantic County specifically for Smiley." App. at 100. Assuming Smiley's drug purchases were relatively consistent during the 240 weeks the conspiracy lasted, he would have purchased a total of 53.76 kilograms of cocaine. Later evidence corroborates the inference that Smiley continued to purchase similar amounts throughout the conspiracy. For example, on December 28, 1998 investigators intercepted a telephone conversation involving Smiley, his brother Breon and Gregory Knox in which they appear to have discussed a shipment of 675 grams of cocaine. An analysis of messages transmitted over Smiley's pager from December 15, 1998 to February 10, 1999 revealed that over that 57 day period, Smiley sold approximately 25 grams of cocaine per day.

We cannot say that the District Court clearly erred in determining Smiley was responsible for 15 to 50 kilograms of cocaine over the course of the conspiracy.

                              III.
Smiley also contends that the District Court erred in determining that there was "considerable evidence to support [an] enhancement [under U.S.S.G. 3C1.1] for the obstruction of justice." App. at 83. Under U.S.S.G. 3C1.1, a two level enhancement is appropriate:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense . . .

U.S.S.G. 3C1.1. The commentary to this section provides as an example of the type of conduct covered by the adjustment, "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding . . . or attempting to do so." U.S.S.G. 3C1.1 cmt. application notes 4(d).

Smiley asserts three problems with the application of 3C1.1 to him: "[F]irst, there is no evidence that [Smiley] destroyed evidence upon hearing that a law enforcement action against him was imminent; second, [Smiley] has a constitutional right to be free to cease illegal activity and comply with the law; and finally, the standard used by the district court to impose this enhancement was improper. " Br. of Appellant at 24.

On January 30, 1999, law enforcement agents intercepted a telephone conversation in which Gregory Knox warned Smiley that the police were investigating his activities and had planned a series of searches and arrests. At the conclusion of their conversation, Knox and Smiley had the following exchange:

> Knox:      . . . Just clean up.
> Smiley:  Yeah, doing nothin['] now.
> Knox:      Huh?
> Smiley:  Getting ready clean up, [inaudible], hey you, I gonna get ready, I'm gonna get with you.
> Knox:      Alright.

App. at 121-22.

Detective DiGiovanni testified at Rajah Miller's trial that Smiley's statement to Knox communicates Smiley's plan to "clean up around his area to make sure nothing is there in case the raids are true." Supp. App. at 121. Detective DiGiovanni also testified that "we believed that we did not find the quantities and thin[gs] we were looking for because as they said in their own conversations, they had cleaned up." Supp. App. at 121. Breon Smiley, Keith Smiley's brother, corroborated the view held by Detective DiGiovanni. The DEA Form 6 interview report concerning Breon Smiley's proffer indicates:

> Breon SMILEY stated that KNOX got the tip about the "raids[."]
> Breon Smiley stated that Keith SMILEY moved out of the house for about
> a week and took everything out of the house. Breon SMILEY stated that
> Keith SMILEY took out his scale, police scanner, cell phone, pictures, etc
> from the house. Breon SMILEY stated that he thought the raid was true
> and that the police were coming for Keith SMILEY.

App. at 123.  The District Court did not clearly err in finding that Smiley concealed evidence after learning of the imminent raids.

As to his second contention, Smiley points to no provision of the United States Constitution which protects a person's right to destroy evidence on learning that he is under investigation.  On the contrary, as the Supreme Court has stated, the argument that there is a constitutionally protected right to destroy evidence "defies both logic and common sense."  Segura v. United States, 468 U.S. 796, 816 (1984).

Finally, the District Court did not err in applying the preponderance of the evidence rather than a clear and convincing standard.  As we explained in United States v. Fiorelli, 133 F.3d 218 (3d Cir. 1998), the case from this circuit which Smiley cites in support of his argument, effective November 1, 1997 the Sentencing Commission altered Application Note 1, "so that the Application Note 'no longer suggests the use of a heightened standard of proof'" for  3C1.1.  Id. at 222 n.3 (quoting U.S.S.G. Appendix C, Amendment 566 (1997)).  We went on to observe in Fiorelli that, "The Commission's explanation acknowledges that the concluding sentence of the prior version, which originated in 1990, suggested a standard higher than a preponderance of the evidence and indicates it was stricken to eliminate that suggestion in the future."  Id.  As the 1998 Sentencing Guidelines apply to Smiley, the clear and convincing standard was no longer in effect pursuant to the 1997 amendment, and the District Court correctly applied the preponderance of the evidence standard.

### IV.

Smiley next suggests the District Court erred in enhancing his sentence for the use and possession of a handgun.  Section 2D1.1(b)(1) of the Sentencing Guidelines provides that "if a dangerous weapon (including a firearm) was possessed, increase by 2 levels."  The District Court determined that the evidence in this case established, "certainly beyond a preponderance of the evidence that the defendant did indeed possess a firearm in connection with his drug distribution operation."  App. at 76.

Smiley concedes that on August 13, 1998, "During one particular drug transaction, a weapon was in a closet separate and apart from the transaction."  Br. of Appellant at 30-31.  The government asserts that on that date Officer Crawley and Edward Gardner participated in an undercover drug transaction with Smiley in his bedroom.  According to Crawley's testimony at Rajah Miller's trial, during that transaction, Smiley pulled a gun from his closet and "Keith Smiley racked the gun back and pointed it to Mr. Gardner in a joking manner and asked him what was up?"  Supp. App. at 53.  Additionally, Derrick Johnson testified that Smiley had guns, which Rajah Miller held for him.  Supp. App. at 60-61.  Johnson also testified that the group "went to violence" to resolve intractable problems with rival drug dealers.  Supp. App. at 60.  Johnson observed that the group used guns because "you need a gun to sell drugs, protect yourself. That's part of drug dealing."  Supp. App. at 60.  The District Court did not clearly err.

### V.

Smiley next argues that the District Court erred in assigning him a criminal history category of IV.  Specifically, Smiley disputes the District Court's finding that Smiley "committed the instant offense while . . . [on] parole," under U.S.S.G.  4A1.1(d), resulting in two points, and the District Court's finding that he committed the instant offense within five years of a juvenile conviction for delinquency under U.S.S.G. 4A1.2(d)(2)(B), meriting another point.  Even assuming Smiley is correct that the District Court erroneously assigned him the three criminal history points which he contests, he would still have a total of six criminal history points, for a criminal history category of III.  With a total offense level of 38 and a criminal history category of III, the applicable guideline range is 292 to 365 months, above the 240 months to which Smiley was sentenced.  Because Smiley's sentence is below the minimum applicable guideline range, and 240 months is the statutory maximum, his sentence cannot be any lower.  See 21

U.S.C.  841(b)(1)(C); U.S.S.G.  5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."). Accordingly, any error would have been harmless. See 28 U.S.C.  2111 (2002); Fed. R. Crim. Proc. 52(a).

## VI.

Finally, Smiley argues that his conviction for conspiracy under 21 U.S.C.  846, in violation of 21 U.S.C.  841(a)(1), must be vacated because  841 is unconstitutional under Apprendi. As Smiley acknowledges, this court explicitly rejected the argument that  841 is unconstitutional under Apprendi in United States v. Kelly, 272 F.3d 622 (3d Cir. 2001). Absent any intervening Supreme Court or en banc decision, we are bound by the prior precedent of this court and must decline Smiley's invitation to reconsider Kelly. See, e.g., United States v. Cont'l Airlines (In re Cont'l Airlines), 134 F.3d 536, 542 (3d Cir. 1998) (noting "'a panel of this court is bound to follow the holdings of published opinions of prior panels of this court unless overruled by the court en banc or the holding is undermined by a subsequent Supreme Court case'") (alteration in original) (quoting Nationwide Ins. Co. v. Patterson, 953 F.2d 44, 46 (3d Cir. 1991)); 3d Cir. Internal Operating P. 9.1 ("It is the tradition of this court that the holding of a panel in a precedential opinion is binding on subsequent panels. Thus no subsequent panels overrules the holding in a precedential opinion of a previous panel. Court en banc consideration is required to do so.").

## VII.

For the reasons set forth, we will affirm the judgment of sentence of the District Court.

_____

TO THE CLERK:

Please file the foregoing opinion.



/s/Dolores K. Sloviter
Circuit Judge